616 A.2d 988

COMMONWEALTH of Pennsylvania

v.

**Larry COTTAM and Leona Cottam, Appellants.**

Superior Court of Pennsylvania.

Argued May 27, 1992.

Filed Sept. 17, 1992.

Reargument Denied Nov. 24, 1992.

320

Albert J. Flora, Jr., Wilkes–Barre, for appellant.

Scott Gartley, Asst. Dist. Atty., Wilkes–Barre, for Com., appellee.

Before CIRILLO, POPOVICH and HOFFMAN, JJ.

HOFFMAN, Judge:

This is a consolidated appeal from judgments of sentence for third degree murder, recklessly endangering another person, and endangering the welfare of children.[1] Appellants, Larry and Leona Cottam, raise the following issues for our review:

> I. WHETHER THE TRIAL COURT ERRED IN PERMITTING VOIR DIRE QUESTIONS OF THE COMMONWEALTH WHICH CHALLENGED [THE] COTTAMS' RELIGIOUS BELIEF ON TITHING?
>
> II. WHETHER THE TRIAL COURT ERRED IN ALLOWING A COMMONWEALTH WITNESS TO TESTI-

---

1. 18 Pa.C.S.A. §§ 2502(c), 2705, 4304, respectively.

FY AS TO HIS RELIGIOUS BELIEFS WHICH WERE CONTRARY TO THE BELIEFS OF THE COTTAMS? III. WHETHER THE TRIAL COURT ERRED IN DENYING [THE] COTTAMS' MOTIONS FOR MISTRIAL WHEN THE CUMULATIVE EFFECT OF THE OPENING AND CLOSING REMARKS OF THE PROSECUTOR CHALLENGED [THE] COTTAMS' RELIGIOUS BELIEFS AND INTERJECTED PERSONAL OPINION?

IV. WHETHER THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY ON THE ABSOLUTENESS OF THE RELIGIOUS BELIEFS OF [THE] COTTAMS AND THEIR CHILDREN, WHETHER THE CHILDREN HAD THE INTELLECTUAL AND PHYSICAL MATURITY TO UNDERSTAND THE SIGNIFICANCE OF THEIR ACTIONS AND TO FORMULATE AND EXERCISE THEIR OWN PERSONAL RELIGIOUS IDENTITY AND WHETHER THE COMMONWEALTH HAS THE BURDEN TO DISPROVE A MISTAKE OF FACT?

V. WHETHER THE TRIAL COURT ERRED IN ADMITTING PHOTOGRAPHS OF THE DECEASED?

VI. WHETHER SUBJECTING [THE] COTTAMS TO CRUEL AND UNUSUAL PUNISHMENT DURING THE JURY SELECTION PROCESS INTERFERED WITH THAT PROCESS TO THE EXTENT THAT THEY WERE DEPRIVED OF DUE PROCESS OF LAW AND ASSISTANCE OF COUNSEL?

VII. WHETHER THE EVIDENCE WAS SUFFICIENT TO ESTABLISH THE REQUISITE MENS REA FOR EACH OF THE CRIMES?

VIII. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN IMPOSING SENTENCE WHEN IT QUESTIONED THE COTTAMS' RELIGIOUS BELIEFS?

Appellants' Brief at 3. For the following reasons, we affirm.

Appellants were arrested and charged with murder in the third degree, voluntary manslaughter, involuntary manslaugh-

ter, recklessly endangering another person (two counts), and endangering the welfare of children (two counts). All charges stemmed from the starvation death of their fourteen-year-old son, Eric, and the malnutrition of their twelve-year-old daughter, Laura. Following a jury trial, on September 8, 1989, appellants were convicted of murder in the third degree, recklessly endangering another person (two counts), and endangering the welfare of children (two counts). Appellants filed post-verdict motions for a new trial and/or arrest of judgment on September 13, 1989. On October 31, 1990, by leave of court, appellants filed four additional assignments of error and amendments to two original assignments of error. The trial court denied all post-verdict motions on April 24, 1991. Appellants were then sentenced to not-less-than-four-nor-more-than-ten years incarceration for murder in the third degree, a consecutive term of not-less-than-one-nor-more-than-two years incarceration on count one of reckless endangering another person, a concurrent term of not-less-than-one-nor-more-than-two years incarceration for count two of recklessly endangering another person and two consecutive terms of five years probation for each count of endangering the welfare of children. A motion to modify sentence was filed and denied. This timely appeal followed.

I.

Appellants first contend that the trial court erred in permitting the Commonwealth to ask questions during voir dire which challenged appellants' religious beliefs on tithing.[2] Specifically, appellants take issue with the following Commonwealth question:

Q. The Commonwealth is alleging that the defendants, Larry and Leona Cottam, parents of Eric and Laura Cottam, ages fourteen and twelve, failed to provide food for a period of approximately six weeks for their two children. They did this, despite the fact that the Commonwealth is

2. Tithing is defined generally as the levying or offering of one tenth of one's income for the support of one's church. *The Random House Dictionary* 909 (1980).

alleging that they had approximately three thousand dollars at their disposal. The Commonwealth further alleges, that as a result of their actions, fourteen year old Eric Cottam died and twelve year old Laura Cottam was severely [malnourished], keeping in mind that these [are] allegations, at this time, and the Commonwealth has the burden of proving each of these allegations, is there anything about the nature of the incident that would make it difficult for you to sit as a fair and impartial juror?

Voir Dire Proceedings, August 15, 1989, at 63–64. Appellants argue that this question challenged the validity and sincerity of their religious beliefs on the concept of tithing and thus, was improper. We disagree.

Preliminarily, we note that the scope of voir dire rests in the sound discretion of the trial court and will not be reversed absent a gross abuse of discretion. *Commonwealth v. Newman*, 382 Pa.Super. 220, 238, 555 A.2d 151, 159 (1989); *Commonwealth v. Delligatti*, 371 Pa.Super. 315, 329, 538 A.2d 34, 41 (1988). Moreover, the sole purpose of voir dire is to secure a fair, competent, impartial and unprejudiced jury. *Commonwealth v. Smith*, 382 Pa.Super. 288, 301, 555 A.2d 185, 191 (1989); *Commonwealth v. Merrick*, 338 Pa.Super. 495, 500, 488 A.2d 1, 3 (1985). Accordingly,

[t]he voir dire examination [should] provide an opportunity to counsel to assess the qualifications of prospective jurors to serve. It is therefore appropriate to use such an examination to disclose fixed opinions or to expose other reasons for disqualification. Thus the inquiry must be directed at ascertaining whether the venireperson is competent and capable of rendering a fair, impartial and unbiased verdict.

*Commonwealth v. Drew*, 500 Pa. 585, 588, 459 A.2d 318, 320 (1983); *Commonwealth v. Smith, supra*, 382 Pa.Super. at 301, 555 A.2d at 191.

In the instant case, we find that the Commonwealth question did not challenge the validity and sincerity of appellants' religious beliefs in tithing. First, the question is devoid of any mention of the process of tithing and of appellants' religious beliefs therein. Second, the question attempts to

disclose any fixed opinion on the part of the prospective juror on what the appellants could have done with the money in their possession. Such probing is necessary in order to determine whether the prospective juror was predisposed to disregard any jury instruction pertaining to potential defenses and thus, to render a verdict based solely on his or her opinion. Accordingly, the trial court did not abuse its discretion in permitting the Commonwealth question.

## II.

Appellants next contend that the trial court erred in permitting Commonwealth witness Gerry Page to testify as an expert on the concept of tithing. Particularly, appellants argue that the trial court permitted Page, who is a Seventh Day Adventist minister, to testify from a religious perspective as to the definition of tithing, as well as the scriptural basis for and the procedure of tithing. Appellants argue that while testifying, Page stated that tithe money was to be given to the church and that an exception to the requirement of tithing existed in cases of extreme need, such as where the money was needed to buy basic necessities. Appellants contend that these two concepts contradicted their beliefs that tithe money must be held by the individual and may not be used for any purpose. As a result, appellants argue that the jury was permitted to evaluate the sincerity and validity of appellants' religious beliefs in violation of their First Amendment rights.

In addition, appellants argue that during Page's testimony, the court reviewed and interpreted a passage of the Bible. Appellants argue that the court's doing so suggested to the jury that appellants' beliefs were unorthodox and that the trial court and the Commonwealth supported the dogma of Page's religious sect over that of appellants' beliefs. Consequently, appellants argue that the cumulative effect of Page's testimony and the court's actions served no other purpose

than to isolate them in the eyes of the jury and thus, to prejudice them.[3] Appellants' claims are spurious.

 ▮▮▮ The admission of expert testimony is within the sound discretion of the trial court, whose decision will not be overturned absent an abuse of that discretion. *Commonwealth v. Giffin,* 407 Pa.Super. 15, 27, 595 A.2d 101, 107 (1991); *Commonwealth v. Emge,* 381 Pa.Super. 139, 141, 553 A.2d 74, 74 (1988). Expert testimony is admissible where it involves explanations and inferences not within the range of ordinary training, knowledge, intelligence and experience. *Giffin, su-*

---

3. In support of their argument, appellants cite to *Commonwealth v. Greenwood,* 488 Pa. 618, 413 A.2d 655 (1980) and *Commonwealth v. Mimms,* 477 Pa. 553, 385 A.2d 334 (1978). In both of these cases, a witness was questioned concerning his religious beliefs. Our Supreme Court held that the questions were irrelevant to the issues involved in the cases and were simply being used to attack the credibility of the witnesses, a violation of the Act of April 23, 1909, P.L. 140, § 3, 28 P.S. § 313 (repealed but recodified in 42 Pa.C.S.A. § 5902(b)), which provides:

> No witness shall be questioned in any judicial proceeding, concerning his religious belief; nor shall any evidence be heard upon the subject, for the purpose of affecting either his competency or credibility.

In light of appellants' citing to these cases and thus, indirectly, this Act, we interpret appellants' argument to be as follows. Because appellants' religious beliefs were made known to the jury, Gerry Page's testimony impeached appellants' credibility, and fixed in the minds of the jury bias and hostility towards them. We disagree.

Our Supreme Court has rejected a *per se* rule of reversible error in any case in which reference to a witness' religious beliefs is made. Instead, "whether evidence admitted in violation of the statute actually deprives a defendant of his rights to a fair trial must be viewed in light of the attendant circumstances." *Commonwealth v. Mimms, supra,* 477 Pa. at 559 n. 8, 385 A.2d at 336 n. 8; *see also Commonwealth v. Rainey,* 271 Pa.Super. 240, 246, 412 A.2d 1106, 1108–09 (1979). The main purpose of the rule is to prohibit inflammatory questions that could "form in the minds of the jury bias and hostility toward [the defendant] and thus, prevent an objective verdict." *Commonwealth v. Hoskins,* 485 Pa. 542, 556, 403 A.2d 521, 528 (1979); *see also Commonwealth v. Brown,* 247 Pa.Super. 401, 372 A.2d 887 (1977); *Box v. Petsock,* 697 F.Supp. 821 (M.D.Pa.1987).

In the instant case, the purpose of the rule is not implicated. For the reasons that follow in the text, the testimony elicited from Gerry Page was relevant to the issues at hand. *Commonwealth v. Riggins,* 374 Pa.Super. 243, 250, 542 A.2d 1004, 1007 (1988). Moreover, Page's testimony was sufficiently restricted by the trial court in order to eliminate any undue prejudice. Consequently, appellants' claim must fail.

*pra*, 407 Pa.Super. at 27, 595 A.2d at 107; *Commonwealth v. Cepull*, 390 Pa.Super. 167, 169–70, 568 A.2d 247, 248 (1990), *allocatur denied*, 525 Pa. 624, 578 A.2d 411 (1990). When evidence may be inflammatory or unduly prejudicial, the trial court must perform a balancing test in which it weighs the inflammatory nature of the evidence against its probative value. *Commonwealth v. Welch*, 401 Pa.Super. 393, 398, 585 A.2d 517, 520 (1991). Then, if the trial court finds that the probative value of the evidence outweighs any undue prejudice, it may in its discretion admit such evidence.

■ Gerry Page testified that an exception to the requirement to tithe existed in Matthew 12:2–4 of the Bible. However, before he was able to testify as to what the exception was, appellants' counsel objected. The trial court, in ruling on whether to permit Page to testify as to the passage, silently read the Bible passage and determined that it would be prejudicial to permit testimony on it. The court then sustained the objection. Accordingly, contrary to appellants' argument, the exception to tithing, that tithe money may be utilized to purchase necessities, was not made known to the jury. Moreover, the court's conduct of reading and interpreting the passage in order to rule on the objection does not infer that the court had adopted the concept of tithing as espoused by Page or the Seventh Day Adventist Church. The court read and interpreted the passage solely to rule on the objection and, more specifically, to determine if the admission of the passage would be prejudicial to appellants. Thus, it was to appellants' advantage that the court reviewed the passage.

■ Furthermore, the trial court found that the testimony on the concept of tithing was necessary because both appellants and the Commonwealth continually referred to tithing and tithe money and the court determined that the average layperson may not know what this concept embodied. N.T., Vol. II, August 25, 1989, at 690. We agree and find no abuse of discretion in the court's permitting expert testimony on the subject.

 We now turn to appellants' contention that the sincerity and validity of their religious beliefs were unconstitutionally called into question by Page's testimony. Specifically, appellants point to the fact that Page's testimony that tithe money is given to the church to distribute contradicts appellants' belief that the money must remain with the individual. We agree with appellants that Page's testimony may have raised the issue of whether appellants' beliefs were sincerely held.[4] However, we disagree with appellants' assertion that such an inquiry was unconstitutional.[5] Moreover, we find no

**4.** We cannot see how the *validity* of appellants' beliefs is questioned at all by Page's testimony.

**5.** In *United States v. Ballard*, 322 U.S. 78, 64 S.Ct. 882, 88 L.Ed. 1148 (1944), the United States Supreme Court held that a jury could determine whether religious beliefs were sincerely held, but not whether they were true. In *Ballard*, the defendants had solicited money by representing themselves as divine messengers and were on trial for mail fraud. Justice Douglas, writing for the Court, carefully delimited the jury inquiry to questions of sincerity and not the truth or falsity of defendants' beliefs. *Id.* at 86–87, 64 S.Ct. at 886–887.

Since *Ballard*, the Supreme Court has upheld inquiry into whether a party's religious beliefs were sincerely held when that party is claiming an exemption from a government requirement. *See United States v. Seeger*, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965) (when an individual seeks exemption from military training and service in this country because of his religious training and beliefs which are in opposition to war, the government has the right to inquire as to whether the belief is serious and meaningful); *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (Supreme Court extensively reviewed the Amish culture in part to indicate that the Amish objections to education beyond the eighth grade were rooted in sincere religious beliefs). Furthermore, other federal courts have followed the Court's holding in *Ballard* and inquired into sincerity. *See Africa v. Commonwealth of Pennsylvania*, 662 F.2d 1025, 1026 (3rd Cir.1981) (inmate's request for special diet found to be based on sincerely held belief); *Lewis v. Califano*, 616 F.2d 73 (3rd Cir.1980) (on review of denial of Social Security benefits, issue raised of whether religious beliefs were sincerely held where woman was denied benefits when she refused to undergo surgery to remove a tumor, claiming that her religious beliefs in faith healing prohibited her from undergoing surgery); *Johnson v. Pa. Bureau of Corrections*, 661 F.Supp. 425 (W.D.Pa. 1987) (prisoners brought action against prison officers claiming violation of right of privacy and religious beliefs by being viewed naked by female prison guards); *Cole v. Fulcomer*, 588 F.Supp. 772 (M.D.Pa. 1984) (prisoner claimed that prison haircut infringed upon the traditional religious beliefs embodied in Native American culture). Therefore, we conclude that under the United States Constitution, inquiry into whether a defendant sincerely holds the religious beliefs he is

prejudice to the appellants even if the jury had undertaken such an inquiry. As stated in Section IV of this opinion, such an inquiry was not necessary in order for the jury to make a determination of appellants' guilt or innocence. Therefore, admission of Page's testimony was proper.

### III.

Appellants' third contention is that the trial court erred in failing to sustain all of their objections to eleven remarks of the prosecutor and, in denying their motions for a mistrial made during the opening and closing remarks of the prosecutor. Appellants' claim is meritless.

Initially we note that the decision whether to declare a mistrial is within the sound discretion of the trial judge and will not be reversed absent a flagrant abuse of discretion. *Commonwealth v. Riggins, supra,* 374 Pa.Super. at 251, 542 A.2d at 1008 (citing *Commonwealth v. Hamm,* 325 Pa.Super. 401, 412, 473 A.2d 128, 133 (1984) and *Commonwealth v. Seigrist,* 253 Pa.Super. 411, 418, 385 A.2d 405, 408 (1978)). The granting of such a motion is not required in all situations where the language of the district attorney is intemperate, uncalled for or improper. Prosecutorial comments will constitute reversible error only where the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict. *Commonwealth v. Hardcastle,* 519 Pa. 236,

espousing in a case where the defendant is claiming an exemption from a government requirement is valid. *See also,* Tribe, American Constitutional Law, Second Edition, § 14–12, The Requirement that Free Exercise Claimants Show Sincerity and Religious Burden, 1242–46.

With regard to the protections afforded by the Constitution of this Commonwealth, appellants have not cited to, nor have we uncovered, any ruling within the Commonwealth that affords greater protection to a defendant than *Ballard* and thus, prohibits inquiry with regard to whether a defendant sincerely holds the religious beliefs in question. Accordingly, we will follow the federal precedent and hold that when a defendant is claiming exemption from a government requirement, on the basis of religious beliefs, inquiry may be made into whether the defendant sincerely holds those beliefs.

254, 546 A.2d 1101, 1109 (1988); *Commonwealth v. Brawner*, 381 Pa.Super. 265, 275–76, 553 A.2d 458, 463 (1989). Moreover, when the cumulative effect of any improper remarks so prejudices a jury as to prevent a fair trial, reversible error will exist. *Commonwealth v. Hickman*, 319 Pa.Super. 261, 268, 466 A.2d 148, 150 (1983); *Commonwealth v. Baranyai*, 296 Pa.Super. 342, 348, 442 A.2d 800, 803 (1982).

In evaluating the effect of the prosecutor's statements, the statements cannot be viewed in isolation but must be considered in the context in which they were made. *Commonwealth v. D'Amato*, 514 Pa. 471, 526 A.2d 300 (1987); *Commonwealth v. Maxwell*, 505 Pa. 152, 166, 477 A.2d 1309, 1317 (1984). Moreover, "we must not lose sight of the fact that the trial is an adversarial proceeding . . . and the prosecution, like the defense, must be accorded reasonable latitude in fairly presenting its version of the case to the jury." *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 53, 454 A.2d 937, 957 (1982). Further, during closing argument, the prosecutor may attempt to rebut arguments made by the defense during the defense summation. *Commonwealth v. Parente*, 294 Pa.Super. 446, 453, 440 A.2d 549, 553 (1982). Nevertheless, the contentions advanced by the prosecution must be confined to the evidence and the legitimate inferences therefrom. *Id.; Commonwealth v. Durah–El*, 344 Pa.Super. 511, 519, 496 A.2d 1222, 1227 (1985). The prosecutor must refrain from making expressions of personal belief or opinion as to the truth or falsity of evidence of a defendant's guilt, including witness credibility. *Commonwealth v. Tippens*, 409 Pa.Super. 536, 546, 598 A.2d 553, 558 (1991). "[D]eliberate attempts to destroy the objectivity and impartiality of the finder of fact so as to cause the verdict to be the product of the emotion rather than reflective judgment will not be tolerated." *Zettlemoyer, supra*, 500 Pa. at 54, 454 A.2d at 957 (citations omitted.) With this background in mind, we will proceed to address appellants' claims of prosecutorial misconduct.

Appellants first take issue with the following statement of the district attorney made during opening argument:

[W]hat you will hear is [that] tithing is the putting away of 10 percent of your weekly salary to be given to the church every week.

Transcript of Opening, August 25, 1989, at 9–10. Appellants argue that this statement improperly challenged the validity and sincerity of appellants' religious beliefs. We disagree. When she made this comment, the assistant district attorney was explaining to the jury the concepts to which witness Gerry Page would testify, specifically how Page would define tithing. Because we have determined in Part II of this opinion that Page's testimony on tithing was properly admitted, we find no error with the Commonwealth statement.

■ The next alleged improper statement made during closing is as follows:

I suggest to you that even in life, Eric Cottam could not speak for himself because he was subject to the complete domination and control of his parents.

Stenographic Record, Vol. II, at 1150–51. Appellants argue that this statement was improper because it violated the trial court's ruling that no issue regarding the exercise of the children's religious beliefs be put before the jury. In addition, appellants argue that this claim prejudiced the jury against them because the jury could infer that appellants' son was left in a state of forced malnutrition and death. We disagree. In making this comment, the district attorney was responding to statements made by appellants' counsel that the children were not locked up, beaten or tied to the bed and thus, were free to do as they pleased. Transcript of Opening of Albert Flora, at 16. Accordingly, the prosecutor's statement was proper.

■ The nine remaining alleged improper statements made by the prosecutor during opening or closing are as follows:

Leona Cottam wanted no part of the church ... (Transcript of Opening Argument, at 17, 19)

Larry and Leona Cottam did not attend their son's funeral. (*Id.* at 13, 14)

[A]re we going to allow people to hold beliefs that defy the laws of nature ... (Stenographic Record, Vol. II, at 1148)

[I]t was discussed that the Bible would indicate that spending tithe money for personal purposes is theft. Elder Page noted that there was one exception. (*Id.* at 1168–69)

Laura indicated that she and her brother would put a bucket of ... water outside to make ice. For what purpose? To eat the ice. While other children enjoyed Thanksgiving and Christmas dinner.... (*Id.* at 1171–72)

I am very proud to represent the interests of Eric Cottam. I feel as though I can speak for him because he is not here to speak for himself.... (*Id.* at 1150–51)

I ask the defense, concerning their argument, where is the beef.... (*Id.* at 1151–52)

Trooper Ducaji ... indicated that Larry Cottam expressed concern that he was afraid his wife and daughter were going to die ... and on behalf of Eric, I suggest to you ... perhaps that concern should have been expressed.... (*Id.* at 1153–54)

The defense introduced Doctor Carzo's report and read it into evidence ... I would suggest to you that it is irrelevant to the issue at hand.... (*Id.* at 1173)

Appellants argue that these statements individually and cumulatively were improper because they challenged the validity and sincerity of appellants' religious beliefs, contained personal opinions on the credibility of witnesses and inflamed the passions of the jury against them. Accordingly, appellants argue that the trial court abused its discretion in denying their motions for a mistrial. We disagree.

While many of the aforementioned statements stretch the limits of prosecutorial argument, we note that with regard to all nine statements, appellants' objections were sustained by the trial court. In addition, with regard to three of the statements, cautionary instructions were given. At the beginning of the trial, the jury was instructed that when an objection to evidence was sustained, they were to completely disregard that evidence. Stenographic Record, Vol. I, at 27–28. Moreover, the jury was instructed that any arguments

made by the counsel were not evidence, that only arguments supported by the evidence were to be considered, that they were not bound by any opinion expressed by counsel and that they were the sole arbiters of credibility. *Id.* at 23–28. In light of these instructions and reviewing the context in which the nine statements were made and the issues involved in the case, we cannot say that the unavoidable effect of the statements, individually or cumulatively was to so prejudice the jury as to form in their minds a fixed bias or hostility so as to prevent them from weighing the evidence impartially and fairly. Thus, we find that the trial court did not abuse its discretion in denying appellants' motions for a mistrial.

## IV.

■ Appellants' fourth contention is that the trial court erred in failing to instruct the jury according to the instructions submitted by the appellants regarding the sincerity and validity of their religious beliefs, the independent religious beliefs of their children, and the Commonwealth's burden to prove the absence of mistake of fact. Appellants' claims are meritless.

We shall not reverse the trial court's refusal of a tendered point for charge unless the refusal was prejudicial to the defendant. *Commonwealth v. Potts,* 314 Pa.Super. 256, 460 A.2d 1127 (1983); *Commonwealth v. Henderson,* 249 Pa.Super. 472, 378 A.2d 393 (1977).

*Commonwealth v. Newman,* 382 Pa.Super. 220, 236, 555 A.2d 151, 158–59 (1989). If the proffered instruction is inapplicable and improper, the court should not charge on it. *Commonwealth v. Kyle,* 367 Pa.Super. 484, 509–10, 533 A.2d 120, 133 (1987).

■ Appellants first argue that the court erred in failing to instruct the jury that if the jury found Eric and Laura Cottam, to be of sufficient intellect and maturity, and to have voluntarily refrained from eating based on their religious beliefs, then they must conclude that appellants did not have a legal duty to provide food. For support, appellants cite to *In*

*re Green,* 448 Pa. 338, 292 A.2d 387 (1972) and *Zummo v. Zummo,* 394 Pa.Super. 30, 574 A.2d 1130 (1990).

In *Green, supra,* a state hospital filed a petition seeking to have Ricky Green declared a "neglected child" under the then Juvenile Court Law (presently found at 42 Pa.C.S.A. § 6302 (1982)) and have it appointed Green's guardian. Green, who was seventeen-years-old, suffered from severe curvature of the spine which prevented him from standing. Doctors recommended an operation known as "spinal fusion." Green's mother agreed to the operation but refused to permit Green to have a blood transfusion based on her religious beliefs. This refusal prompted the hospital to seek court relief. This court reversed the lower court's denial of the hospital's petition seeking to have Green declared a neglected child and the hospital named guardian. Our Supreme Court reversed this court, determined that Green was of age to make the decision without parental intervention, and remanded to permit Green to express an opinion on whether he wanted the operation.

In *Zummo, supra,* the father of three minor children appealed from a custody order which prohibited him from taking his children to religious services which were "contrary to the Jewish faith" during periods of lawful custody and visitation. The father contended that the order violated his First Amendment free exercise rights. In ordering the prohibition, the trial court reasoned *inter alia* that the children had chosen the Jewish faith and thus, should continue in their chosen course. A panel of this court disagreed. The panel held that a legally cognizable religious identity will only be established when the child herself asserts a religious identity and then, only when the child has reached "sufficient maturity and intellectual development to understand the significance of the assertion." *Id.* at 67, 574 A.2d at 1149. This court noted that although no uniform age of discretion had been set, children twelve or older are generally considered mature, while children eight and younger are not. *Id.* The panel then concluded that the children in the case at hand, who were ages three, four and eight, respectively, were too young to assert religious identity

for themselves, and thus the trial court had erred in determining that they had chosen the Jewish faith.

Appellants argue that both *Green* and *Zummo* indicate that if a child is of sufficient maturity and intellect, then she can assert her own religious identity and thus, can voluntarily refrain from eating on the basis of her religious beliefs. Therefore, appellants argue, that, if a jury found that both Laura and Eric Cottam were of sufficient maturity and intellect and voluntarily refrained from eating on the basis of their religious beliefs, then appellants did not have a duty to provide food for them. Consequently, appellants contend that the jury should have been so instructed. We disagree.

First, appellants' reliance on *Green* and *Zummo* is misplaced. *Green, supra,* did not involve a life-threatening decision. Our Supreme Court expressly stated that Green could survive without the operation. *Id.* 448 Pa. at 345, 292 A.2d at 390. Consequently, the Court's remanding so that Green could state his position on whether he wanted to undergo the operation—or assert the same religious objections as his mother—was not a decision to permit Green to jeopardize his life. Moreover, the presumption raised in *Zummo,* that children twelve years old or greater are mature enough to assert a religious identity, has no bearing on whether these children are mature enough to decide to refrain from eating for forty-two consecutive days.

Second, we agree with the trial court that, even if Laura and Eric were considered mature enough to freely exercise their religious beliefs, this does not dispel appellants' duty while the children are in their care, custody and control to provide them with parental care, direction and sustenance. *See* Opinion, Cappellini, J., April 25, 1991, at 14. Accordingly, the trial court did not err in denying appellants' requested instruction.

Appellants next argue that the trial court erred in failing to instruct the jury that the sincerity and validity of their religious beliefs and those of their children were not at issue and therefore that the sincerity and validity of their beliefs must be considered absolute. Appellants' claim is meritless.

336

■ The validity and sincerity of the religious beliefs of appellants and their children were not relevant to the issues presented. Appellants were charged with failing in their legal duty to provide for their children, the result of which was the death of their son and the severe malnutrition of their daughter. Although appellants alleged the defense of mistake of fact—namely, a belief in divine intervention—they had no choice but to seek help, despite their religious beliefs, when they were faced with a condition which threatened their child's life. *Commonwealth v. Barnhart,* 345 Pa.Super. 10, 21, 497 A.2d 616, 622 (1985) (parents have affirmative duty, despite their religious beliefs, to seek medical help when child's life is threatened). Consequently, the trial court did not err in denying appellants' requested instruction.

Appellants' third argument is that the trial court erred in failing to instruct the jury that the burden of proving absence of mistake of fact rests with the Commonwealth. We disagree.

■ "[I]n charging the jury, the trial court is free to use its own form of expression; the only issue is whether the area is adequately, accurately and clearly presented to the jury." *Commonwealth v. Lesher,* 473 Pa. 141, 148, 373 A.2d 1088, 1091 (1977); *Commonwealth v. Kyle, supra,* 367 Pa.Super. at 510, 533 A.2d at 133. Moreover, when evaluating the charge, we must view the charge as a whole. *Commonwealth v. Klinger,* 369 Pa.Super. 526, 539–40, 535 A.2d 1060, 1066 (1988).

■ In any criminal prosecution, the Commonwealth has the unshifting burden to prove beyond a reasonable doubt all elements of the crime charged. *Commonwealth v. Rose,* 457 Pa. 380, 389, 321 A.2d 880, 389 (1974). The burden is neither increased nor diminished when a defendant attempts to disprove an element of the crime by introducing an affirmative defense. *Id.* Accordingly, when charging a jury, a trial judge must communicate to the jury that when evidence of an affirmative defense is offered, the Commonwealth still has the burden to prove each element of the crime charged beyond a reasonable doubt. Thus, the burden never shifts to the defen-

dant. Moreover, the trial judge must state that the jury's determination that the affirmative defense has not been established is essential to finding that the Commonwealth has met its burden. *See generally, Lesher, supra; Commonwealth v. Pounds,* 490 Pa. 621, 417 A.2d 597 (1980); *Rose, supra.*

█ In the instant case, the trial judge instructed the jury as follows:

One of the material elements of the crime of murder in the third degree is malice. Voluntary manslaughter is provocation and heat of passion. Involuntary manslaughter is recklessness or gross negligence. Recklessly endangering another person is recklessness and endangering the welfare of children is knowledge. The Commonwealth must prove each of these elements beyond a reasonable doubt.

The Defendants claim that each of these elements have not been proven because at the time of the alleged offense, they were under a mistaken belief that a supreme being would provide assistance during the period of November 22, 1988 to January 4, 1989.

Ignorance or mistake as to a matter of fact which there's reasonable explanation or excuse is a defense if the ignorance or mistake negates intent, knowledge belief, recklessness or negligence required to establish a material element of the offense.

Therefore, you must consider the evidence tending to show that the Defendants were mistaken concerning the facts, along with all the other evidence, in determining whether the Commonwealth has proven the required malice, knowledge, recklessness and gross negligence as to each of the alleged crimes.

. . .

It is not Defendant's burden to prove that the Defendant is not guilty. Instead, it is the Commonwealth that always has the burden of proving each and every element of the crime charged and that Defendant is guilty of that crime beyond a reasonable doubt.

The person accused of the crime, the Defendant, is not required to present evidence or prove anything in the

Defendant's defense. If the Commonwealth's evidence fails to meet its burden, then your verdict must be not guilty. On the other hand, if the Commonwealth's evidence does prove beyond a reasonable doubt that Defendant is guilty, then your verdict should be guilty....

Stenographic Record, Vol. II, at 1201–1208.

We find that the aforementioned instruction clearly communicated to the jury that the burden of proving each element beyond a reasonable doubt remained with the Commonwealth and that a determination that appellants were not acting under a mistake of fact was necessary to a finding of their guilt. Consequently, appellants' claim must fail.

## V.

Appellants' fifth contention is that the trial court erred in admitting into evidence four photographs of the deceased, Eric Cottam. Specifically, appellants argue that these photographs were inflammatory, cumulative and devoid of essential evidentiary value. We disagree.

Photographs of a murder victim are not *per se* inadmissible. *Commonwealth v. Szuchon,* 506 Pa. 228, 484 A.2d 1365 (1984); *Commonwealth v. Woodward,* 483 Pa. 1, 394 A.2d 508 (1978); *Commonwealth v. Liddick,* 471 Pa. 523, 370 A.2d 729 (1977); *Commonwealth v. Petrakovich,* 459 Pa. 511, 329 A.2d 844 (1974); *Commonwealth v. Collins,* 440 Pa. 368, 269 A.2d 882 (1970). It is the manner in which the corpse was displayed that causes photographs to be emotionally charged. *Id.* The admission of such photographs is in the sound discretion of the trial judge. *Commonwealth v. Petrakovich, supra; Commonwealth v. Scaramuzzino,* 455 Pa. 378, 317 A.2d 225 (1974). The test for determining the admissibility of such evidence requires a two-step analysis. *Commonwealth v. Liddick, supra; Commonwealth v. Petrakovich, supra.* First a court must determine whether the photograph is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's understanding of the facts. *Commonwealth v. Petrakovich, supra.* If the photograph is inflammatory, the trial court must decide

whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors. *Id. See also Commonwealth v. Liddick, supra; Commonwealth v. Scaramuzzino, supra.* If an inflammatory photograph is merely cumulative of other evidence, it will not be deemed admissible. *Commonwealth v. Liddick, supra; Commonwealth v. Scaramuzzino, supra.*

*Commonwealth v. Chester,* 526 Pa. 578, 591, 587 A.2d 1367, 1373–74 (1991). *See Commonwealth v. Gorby,* 527 Pa. 98, 111, 588 A.2d 902, 908 (1991); *Commonwealth v. Hernandez,* 404 Pa.Super. 151, 160, 590 A.2d 325, 329 (1991).

In the instant case, the trial court found that the four photographs of the deceased were not inflammatory.[6] Because appellants have failed to provide this court with the four photographs, we cannot directly view them in order to determine whether the trial court abused its discretion.[7] However, from the notes of testimony, we gather that two of the photos depicted Eric Cottam as he was found by the police and medical personnel, namely lying in his bed, fully clothed. The third picture depicted the deceased lying in bed, clothed but with his shirt pulled up exposing his chest and stomach. Finally, the fourth picture showed the deceased at Mercy

6. Appellants argue that the trial court found that the photographs were inflammatory, because the trial court gave a cautionary instruction prior to the jury's viewing them and because the trial court refused to permit the jury to take the photos into the jury deliberation room. We disagree. First, the trial court expressly stated that it found the photographs were not inflammatory. Opinion, Cappellini, J., April 25, 1991, at 24. Second, before admitting these pictures the trial court viewed a whole array of photographs, excluding some on the basis that they were inflammatory. The court then admitted only the four in question. Finally, the court's giving a cautionary instruction and prohibiting the jury from considering the photos during deliberations does not necessarily indicate that the trial court found the photos inflammatory. It may well be that the court was being extraordinarily cautious.

7. We are distressed with appellants' failure to include in the record these photographs. Thus, we are compelled to remind appellants' counsel that it is their responsibility to provide a record replete with all exhibits necessary for this court to review the issues raised. Pa.R.A.P. 1921.

Hospital, lying unclothed on his side with his back facing the camera. Stenographic Record, Vol. I, at 152–156. Based solely upon the notes of testimony description, we cannot say that the photographs were of such "a gruesome nature or cast in such an unfair light that they tended to cloud an objective assessment of the guilt or innocence of the defendant." *Commonwealth v. Frederick,* 327 Pa.Super. 199, 212, 475 A.2d 754, 761 (1984) (citing *Commonwealth v. Hubbard,* 472 Pa. 259, 281, 372 A.2d 687, 697 (1977)). In addition, we note that the trial judge was in the best position to gauge the effect that the pictures had on the jury. Consequently, we cannot say that the trial court abused its discretion in finding that the photographs were not inflammatory.[8]

 Because the Commonwealth introduced the photographs in order to support a finding of malice, *see* Stenographic Record, Vol. I, at 137, the photographs were relevant. *See Commonwealth v. McCutchen,* 499 Pa. 597, 454 A.2d 547 (1982) (photographic slides of injuries admissible because relevant to establish intent). Therefore, the trial court did not abuse its discretion in admitting the four photographs.

8. Appellants rely on *Commonwealth v. Robinson,* 273 Pa.Super. 337, 417 A.2d 677 (1979), to support their argument that the photographs were inflammatory and thus, inadmissible. At issue in Robinson was a two by four inch photograph of a three-year-old who had died of starvation. However, appellants' reliance on *Robinson* is misplaced. First, the *Robinson* court never discussed what constituted an inflammatory photograph. Instead, the court merely relied upon the trial court's determination that the photo was inflammatory and proceeded to determine whether the photo was of essential evidentiary value. *Id.* at 343, 417 A.2d at 680–81. Second, cases subsequent to *Robinson,* in which our Supreme Court held similar and more explicit photos not to be inflammatory, support the trial court's determination that the four photos were not inflammatory. *See, e.g., Commonwealth v. Edwards,* 521 Pa. 134, 555 A.2d 818 (1989) (three photographs depicting the beaten face of the victim, the strangulation area of the victim's neck, wounds on the victim's hands and fingers, bite marks on the victims legs, and explicit photographs of the victim's chest and abdomen which related to the sexual nature of the attack.); *Commonwealth v. Holcomb,* 508 Pa. 425, 498 A.2d 833 (1985); (photographs of victim's body as it was found lying in the snow, with much of the clothing ripped off revealing the genitalia); *Commonwealth v. Hudson,* 489 Pa. 620, 414 A.2d 1381 (1980) (eight by ten inch photo of shirtless corpse with a puddle of blood around the head).

## VI.

Appellants' sixth contention is that they were deprived of their rights to assistance of counsel, due process of law, and a fair trial as guaranteed under the United States and Pennsylvania Constitutions because as pretrial detainees they were subjected to cruel and unusual punishment during jury selection. Specifically, appellants argue that as pretrial detainees, they were denied food and equipment and facilities for personal hygiene, including a shower, toothbrush, shaving supplies and clean underclothing. Appellants argue that these conditions prevented them from effectively assisting counsel during jury selection and prejudiced them in the eyes of the selected jury members. Appellants' claims are spurious.

Preliminarily, we note that the Eighth Amendment of the United States Constitution and Article 1, Section 13 of the Pennsylvania Constitution protects defendants against "cruel and unusual punishment." The Pennsylvania prohibition against cruel and unusual punishment is coextensive with the Eighth and Fourteenth Amendment of the United States Constitution. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983); *Commonwealth ex rel. Ford v. Jeffes*, 260 Pa.Super. 432, 394 A.2d 1004 (1978). Pretrial detainees are entitled to clean and sanitary living quarters, and a failure to provide such constitutes cruel and unusual punishment. *Owens–El v. Robinson*, 442 F.Supp. 1368 (W.D.Pa.1978). Moreover, "[c]onditions of confinement that impede a defendant's preparation of his defense (apart, of course, from the fact of confinement itself), or that are so harsh or intolerable as to induce him to plead guilty, or that damage his appearance or mental alertness at trial, are constitutionally suspect and can be justified only by the most compelling necessity." *Campbell v. McGruder*, 580 F.2d 521, 532 (D.C.Cir.1978).

The record in the instant case is devoid of any support for appellants' claims of mistreatment or deprivations so as to rise to the level of cruel and unusual punishment.

Instead, the record indicates that efforts were made to accommodate the appellants, to make sure that they were properly fed, well groomed and given the opportunity to be prepared to help their counsel. Voir Dire, Vol. IV, at 4; Voir Dire, Vol. V, at 3–8. Accordingly, appellants' claims are meritless.

## VII.

Appellants' seventh contention is that there was insufficient evidence to support the verdict. Specifically, appellants argue that the Commonwealth failed to sustain its burden of proving the mens rea element of each of the crimes for which appellants were convicted. We disagree.

In reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offenses charged. *Commonwealth v. Bricker*, 525 Pa. 362, 581 A.2d 147 (1990). *See Commonwealth v. Rhodes*, 510 Pa. 537, 510 A.2d 1217 (1986).

Appellants were convicted of third degree murder.[9] The mens rea required for this crime is malice. 18 Pa.C.S.A. § 2502(c). The definition of malice is well-settled in Pennsylvania:

Malice consists of a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. *Commonwealth v. Drum*, 58 Pa. 9, 15 (1868); *see also Commonwealth v. Young*, 494 Pa. 224, 431 A.2d 230 (1981) ... [Moreover] malice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might

---

9. Third degree murder is defined as:
 All other kinds of murder [other than murder committed during a felony or an intentional killing] shall be murder of the third degree. Murder in the third degree is a felony of the first degree.
 18 Pa.C.S.A. § 2502(c).

cause serious bodily injury. *Commonwealth v. Wanamaker*, 298 Pa.Super. 283, 444 A.2d 1176 (1982).

*Commonwealth v. Pigg*, 391 Pa.Super. 418, 425, 571 A.2d 438, 441 (1990); *Commonwealth v. Badman*, 398 Pa.Super. 315, 326, 580 A.2d 1367, 1372 (1990).

▮▮▮▮▮▮ In the instant case, the evidence established that the deceased, Eric Cottam, died of starvation and malnutrition. Furthermore, the evidence established that at death he measured sixty-nine inches in height and weighed sixty-nine pounds. Stenographic Record, Vol. I, at 174. The deceased was in the sole care and custody of the appellants at the time of his death, and appellants knew of his emaciated condition and the high risk of serious bodily injury he faced. Yet, despite this risk, they did not seek outside help for him.

While appellants argue that they were under the mistaken belief that only prayer would aid their son, such a belief does not necessarily negate the mens rea element. "[T]he right to practice religion freely does not include liberty to expose the child to ... ill health or death." *Commonwealth v. Barnhart, supra*, 345 Pa.Super. at 22, 497 A.2d at 622–23. Parents have "an affirmative duty of providing medical care to protect that child's life, [and thus,] have no choice but to seek medical help." *Id.* at 25, 497 A.2d at 624. Because the evidence establishes that appellants knew that their son was near death and did not seek aid, a jury could have concluded that the Commonwealth had proved beyond a reasonable doubt that appellants consciously disregarded an unjustified and extremely high risk that their actions might cause serious bodily injury to their son. Therefore, we find that there was sufficient evidence of malice.[10]

**10.** Appellants also argue that the trial court improperly instructed the jury on the issue of malice. We disagree. However, we note that appellants' claim is waived because no exception was taken at trial to the charge given. Stenographic Record, Vol. II, at 1244–45. *See Commonwealth v. Ignatavich*, 333 Pa.Super. 617, 482 A.2d 1044 (1984) (defendant in homicide prosecution waived any complaint to trial court's supplemental instructions where defendant took no exception to such instructions).

■■■■■ Appellants were also convicted of recklessly endangering another person.[11] The mens rea required for this crime is a conscious disregard of a known risk of death or great bodily harm to another person. *Commonwealth v. Sanders*, 339 Pa.Super. 373, 379, 489 A.2d 207, 210 (1985); *Commonwealth v. Henck*, 329 Pa.Super. 275, 281, 478 A.2d 465, 468 (1984). Acts of commission or omission by parents towards their children may create a substantial risk of death or great bodily injury. *Commonwealth v. Howard*, 265 Pa.Super. 535, 538, 402 A.2d 674, 676 (1979).

■■■■ In the case at hand, the evidence clearly indicated that appellants' conduct by acts of commission and omission toward their children created a substantial risk of death or serious bodily injury resulting from lack of sustenance. Moreover, the evidence establishes that the Commonwealth has sustained its burden of proof beyond a reasonable doubt that appellants consciously disregarded the risk they created.

. ■■■■ Finally, appellants were convicted of endangering the welfare of children.[12] The mens rea required for this crime is a knowing violation of a duty of care. *Commonwealth v. Cardwell*, 357 Pa.Super. 38, 43, 515 A.2d 311, 313 (1986). Section 301, 18 Pa.C.S.A., fixes the duty of care owed by a parent to a child:

(b) Omission as basis of liability.—Liability for the commission of an offense may not be based on an omission unaccompanied by action unless (1) the omission is expressly made sufficient by the law defining the offense; or (2) a

11. Recklessly endangering another person is defined as:
 A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.
 18 Pa.C.S.A. § 2705.

12. Endangering the welfare of children is defined as:
 A parent ... supervising the welfare of child under 18 years of age, commits a misdemeanor of the second degree if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.
 18 Pa.C.S.A. § 4304.

duty to perform the omitted act is otherwise imposed by law.

In *Commonwealth v. Howard, supra,* this court stated that "the relationship of parent and child has been found to be one which requires affirmative performance, and [that] based upon this relationship a parent may be held liable for omitted acts under Section 301(b)(2)."

Section 302(b), 18 Pa.C.S.A., defines "knowingly" as follows: (2) A person acts knowingly with respect to a material element of an offense when: (i) if the element involves the nature of his conduct or attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

In the instant case, the jury heard evidence that appellants told police officers that: Larry had not made the right decision under the circumstances (Stenographic Record, Vol. I, at 228); he had let it go too far and he should have gone for help (*id.* at 231); Eric's arm had gone numb a few weeks before his death and that they did not do anything about it (*id.* at 237); the children wanted to spend their money for food, but that Leona did not want them to (*id.* at 240); they told Eric that if he went to the neighbors to beg for food that he and his sister would be taken away from them (*id.* at 241); they did not do the right thing (*id.* at 241); they both were equally responsible (*id.* at 241); they knew they were risking everything (*id.* at 288); and it was their fault, not anybody else's fault (*id.* at 297). These statements, if believed by the jury to have been made by appellants, support a finding of a knowing violation of a duty of care. Therefore, the Commonwealth has met its burden in establishing the mens rea for endangering the welfare of children.

## VIII.

Appellants' final contention is that the trial court erred in considering appellants' religious beliefs and practices when

imposing their sentence. Appellants' argue that such consideration called into question the validity and sincerity of those beliefs in violation of the First Amendment. We disagree.

Because appellants are challenging the discretionary aspects of their sentence, they must meet certain preliminary requirements before this court can review the merits of their contention. First, Pa.R.A.P. 2119(f) and *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987), require appellant to include in his brief "a concise statement of reasons relied upon for an allowance of appeal." Pa.R.A.P. 2119(f). Furthermore, Section 9781 of Pa.C.S.A. requires appellant to indicate that a substantial question exists as to whether the sentence imposed was appropriate under the Sentencing Code.[13]

Here, appellants have met the requirements of Pa.R.A.P. 2119(f) and *Tuladziecki*, and have also indicated that a substantial question exists. However, we find that appellants' contention is meritless.

The role of the sentencing judge is to weigh all mitigating and aggravating factors and arrive at an appropriate sentence. *Commonwealth v. Losch, supra*, 369 Pa.Super. at 203, 535 A.2d at 120. This court has held that the sentencing judge has the responsibility of evaluating the information regarding the circumstances of the offense and the character of the defendant and then must formulate and explain the sentence in light of the guidelines specified in the Sentencing Code. *See Commonwealth v. Frazier*, 347 Pa.Super. 64, 67, 500 A.2d 158, 159 (1985). In considering these factors, the court should consider a defendant's prior record, age, personal characteristics and potential for rehabilitation. *Commonwealth v. Phillips*, 342 Pa.Super. 45, 51, 492 A.2d 55, 58 (1985).

**13.** We will be inclined to find that an appellant has raised a substantial question where the appellant advances a colorable argument that the trial judge's actions were: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process. *Commonwealth v. Losch*, 369 Pa.Super. 192, 201 n. 7, 535 A.2d 115, 119 n. 7 (1987).

██ In the instant case, appellants' religious beliefs and practices shed light on their character. Accordingly, it was proper for the sentencing court to consider them as one factor in imposing a sentence. Moreover, in considering them, the court did not challenge the validity and sincerity of appellants' beliefs and practices. Instead, the court merely considered them as a positive factor in determining the appropriate sentence. Transcript of Sentencing, July 19, 1991, at 58–59. Accordingly, appellants' contention lacks merit.

For all of the above-mentioned reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.