COMMONWEALTH of Pennsylvania,
Appellee,

v.

Dennis E. NIXON, Appellant.

COMMONWEALTH of Pennsylvania,
Appellee,

v.

Lorie A. NIXON, Appellant.

Superior Court of Pennsylvania.

Argued April 14, 1998.

Filed Sept. 21, 1998.

Robert E. Stewart, Pittsburgh, for appellants.

David Gorman, Asst. Dist. Atty., Hollidaysburg, for Com., appellee.

Before DEL SOLE, TAMILIA and EAKIN, JJ.

DEL SOLE, Judge:

Appellants, Dennis and Lorie Nixon, were convicted of involuntary manslaughter and endangering the welfare of a child. They were sentenced to two and one-half to five years incarceration and a fine of $1,000. This direct appeal followed. We affirm.

On appeal, Appellants raise five issues. The first three issues concern Appellants' trial counsel's ineffectiveness for failing to raise: (1) Shannon Nixon's refusal of medical treatment pursuant to her right of privacy guaranteed by the U.S. and Pennsylvania constitutions; (2) Shannon Nixon's ability to refuse medical treatment as a mature minor; and (3) a violation of the notice requirement of due process where spiritual treatment was authorized by statute. Appellants additionally argue the trial court erred in failing to deliver a mistake of fact charge to the jury. Finally, Appellants argue the trial court improperly imposed an excessive sentence.

Appellants were the parents of Shannon Nixon ("Shannon"). The Nixon family are members of the Faith Tabernacle Church, a religion in which illnesses are addressed through spiritual treatment rather than by medicine. Thus, when Shannon began to feel ill in June of 1997, Appellants took her to be "anointed" at the church and prayed for her recovery. Shannon initially felt better and told her parents she had received her "victory", a recovery in answer to prayer. However, soon Shannon was ill again. As Shannon became increasingly weak and fell into a coma, Appellants continued to pray for her recovery. Shannon died hours after she fell into a coma. During the autopsy, it was determined that Shannon died of complications related to the onset of diabetes acidosis.

Because of the way Appellants have framed their first three issues, we choose to address the ineffective assistance of counsel claims, as well as the merits of the claims underlying the ineffectiveness claims. Appellants have complained, and we agree, that the trial court's rulings on these issues were not precise. No opinion has been filed to provide additional guidance on the rulings. Therefore, we can not determine clearly whether the trial court found these issues to be waived or whether the trial court addressed them on their merits. Because Appellants have raised these issues in the guise of ineffectiveness and alternatively on their merits, we choose to address both arguments.

*Ineffective Assistance of Counsel*

Trial counsel is presumed to be effective and an appellant has the burden of proving otherwise. *Commonwealth v. Williams*, 524 Pa. 218, 229, 570 A.2d 75, 81 (1990). Appellants present three issues they claim trial counsel was ineffective for failing to raise. A careful review of the record, however, shows that these issues were adequately raised and argued by Appellant's trial counsel before and during the trial and were rejected by the trial court. Accordingly,

there was no waiver of issues and counsel was not ineffective for failing to raise these claims.

### Right to Privacy/Mature Minor

■ As described above, Appellants claim that Shannon had a right to refuse medical treatment pursuant to her constitutional right to privacy which would eliminate Appellants' duty to provide treatment. Appellants argue that a court evaluating a privacy interest should look at whether there exists a compelling state interest upon which to base encroachment into the right of privacy. Further, Appellants argue, because Shannon exercised her right to privacy, "her incapacity as a minor to seek medical treatment fades" and thus, "the [Appellants'] parental duty is discharged." Appellants' Brief at 21. Appellants additionally assert Shannon's ability to refuse medical treatment as a mature minor abrogated Appellants' duty of care. Because both of these arguments necessitate an abrogation of Appellants' parental duty of care, we will address them together.

Although Shannon, as a mature minor, had a right to refuse medical treatment pursuant to her constitutional right to privacy, this right does not discharge her parents' duty to override her decision when her life is in immediate danger. Our Supreme Court, in *Green Appeal*, 448 Pa. 338, 292 A.2d 387 (1972), permitted a sixteen-year-old boy to refuse to undergo an operation based upon religious beliefs. However, the permission to refuse medical treatment extended to minors in *Green* was strictly limited to situations in which the minor's life was not threatened. Thus, *Green* did not provide Shannon with the legal means to refuse medical treatment at a time when her life was in danger.

In a case more directly on point, a panel of this court specifically refused to extend a minor's right to exercise religious beliefs in such a manner that the parents' duties to the minor were abrogated. *Commonwealth v. Cottam*, 420 Pa.Super. 311, 616 A.2d 988 (1992). In *Cottam*, the defendants failed to provide food to their fourteen-year-old son and twelve-year-old daughter for a six-week period. The defendants argued that their children were mature enough to voluntarily exercise their religious beliefs by refraining from eating and consequently, the defendants had no duty to provide food for the children. The court did not agree, holding instead that:

> ... even if [the children] were considered mature enough to freely exercise their religious beliefs, this does not dispel [defendants'] duty while the children are in their care, custody and control to provide them with parental care, direction and sustenance.

*Cottam* at 335–37, 616 A.2d at 1000.

In *Commonwealth v. Barnhart*, 345 Pa.Super. 10, 497 A.2d 616 (1985), another set of parents from Appellants' church were convicted of involuntary manslaughter and endangering the welfare of a child after relying solely on spiritual healing to treat their two-year-old son's cancer. This court held that every parent in the Commonwealth of Pennsylvania had a duty of care to their child, at the very least, "to avert the child's untimely death." *Barnhart*, at 621. The court elaborated on the nature of the parents' duty:

> A parent has the legal duty to protect her child, and the discharge of this duty requires affirmative performance. The inherent dependency of a child upon his parent to obtain medical aid, i.e., the incapacity of a child to evaluate his condition and summon aid by himself, supports imposition of such a duty upon the parent.

*Id.* (citations omitted).

Appellants had a duty to their minor child Shannon to override her own religious beliefs and obtain medical treatment for her when her condition became life-threatening. Neither Shannon's right of privacy, nor her status as a mature minor abrogated that duty. Thus, Appellants' arguments fail on their merits.

### Notice

■ Appellants argue that their prosecution violated notice requirements of due process where spiritual treatment was authorized by statute. Appellants' argument refers to a possible conflict between criminal statutes and child abuse statutes. The Child Protective Services Act ("The CPSA") provides:

If, upon investigation, the county agency determines that a child has not been provided needed medical or surgical care because of seriously held religious beliefs of the child's parents, guardian or person responsible for the child's welfare, which beliefs are consistent with those of a bona fide religion, the child shall not be deemed to be physically or mentally abused. The county agency shall closely monitor the child and shall seek court-ordered medical intervention when the lack of medical or surgical care threatens the child's life or long-term health. In cases involving religious circumstances, all correspondence with a subject of the report and the records of the Department of Public Welfare and the county agency shall not reference "child abuse" and shall acknowledge the religious basis for the child's condition, and the family shall be referred for general protective services, if appropriate.

23 Pa.C.S.A. § 6303(b)(3).

The involuntary manslaughter statute provides:

A person is guilty of involuntary manslaughter when as a direct result of doing an unlawful act in a reckless or grossly negligent manner or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.

18 Pa.C.S.A. § 2504.

Appellants argue that because the CPSA exempts parents who utilize spiritual treatment for their children from characterization as child abusers, they did not have sufficient notice that their spiritual treatment of Shannon could be criminal under the involuntary manslaughter statute. We disagree.

We find that the CPSA and the involuntary manslaughter statutes are not in conflict in their plain meaning, as well as under a constitutional analysis. A plain reading of the statutes shows that an act which does not qualify as child abuse may still be done in a manner which causes death and thus qualifies as involuntary manslaughter. This precise situation occurred in this case. While the Nixons were not considered child abusers for treating their children through spiritual healing, when their otherwise lawful course of conduct led to a child's death, they were guilty of involuntary manslaughter.

Appellants point to statutes in Minnesota and Florida which were found to violate due process requirements upon review by courts considering appeals of convictions similar to Appellants'. These statutes, however, differ significantly from the CPSA. The Minnesota statute in question in *State v. McKown*, 475 N.W.2d 63 (Minn.1991), *cert. denied*, 502 U.S. 1036, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992), provided that "spiritual means or prayer ... shall constitute 'health care.'" *Id.* at 65, n. 3. Similarly, a Florida statute at issue in *Hermanson v. State*, 604 So.2d 775 (Fla. 1992), provided that while spiritual treatment will not be characterized as child abuse, a court may still order:

... when the health of the child requires it, the provision of medical services by a physician, ..., *or treatment by a duly accredited practitioner who relies solely on spiritual means for healing in accordance with the tenets and practices of a well-recognized church or religious organization.*

*Id.* at 776 (emphasis added).

Thus, the Florida statute raised spiritual intervention to a level equal to that of medical treatment. The Minnesota and Florida legislatures specifically defined spiritual healing as accepted treatment for illness in children, raising it to the same level as conventional medical treatment.

The CPSA specifically does not equate spiritual treatment with medical care; rather, it merely exempts parents who treat their children in this manner from characterization as child abusers. Further, the CPSA does not negate the duty imposed on parents to procure medical care for their children; in fact, the CPSA provides a protocol through which the state can step in and enforce that duty "when the lack of medical or surgical care threatens the child's life or long-term health." It is clear that if the Pennsylvania legislature wanted to authorize spiritual treatment as health care, it could have adopted a statute similar to the one in Minnesota. However, the purpose of the CPSA is to ensure that children in life-threatening danger receive proper medical

attention. Thus, the statutes upon which our sister courts found unconstitutional are distinguishable from the CPSA.

*Jury Charge*

■ At trial, Appellants requested the court instruct the jury that Appellants were acting under a mistake of fact. Their mistake of fact, Appellants allege, was that they believed "their daughter would not die and the Lord would intervene." Appellants' Brief at 35. The trial court, however, found the facts did not warrant a mistake of fact charge, and based its holding on Appellants' testimony about God as the giver and taker of life. The trial court concluded "... there was no mistake of fact by them seeking divine intervention." R.R. at 428a.[1]

■ We shall not reverse a trial court's refusal to give a requested jury charge unless the court's refusal was prejudicial to the defendants. *Commonwealth v. Cottam*, 420 Pa.Super. 311, 333–35, 616 A.2d 988, 999 (1988). If the proposed jury charge is inapplicable and improper, the court should not give it to the jury. *Id.*

The trial court found that Appellants' testimony did not provide a proper basis for a mistake of fact charge. We will not disturb the trial court's finding, especially as we look at the testimony of Appellant Lorie Nixon: "I feel that God is the giver and taker of life." R.R. at 388a. While Appellants had hope and faith that divine intervention could cure Shannon, they also knew it might not.

*Sentencing*

Appellants argue the trial court abused its discretion in imposing a sentence above the aggravated range outlined in the sentencing guidelines. Further, Appellants assert, the trial court failed to consider Appellants' rehabilitative capacity. We disagree.

Because these issues challenge the discretionary aspects of sentencing, we must first decide whether to accept Appellants' appeal. 42 Pa.C.S.A. § 9781. Appellants' brief contains the requisite statement of reasons relied upon in support of appeal as required by Pa.R.A.P. 2119(f) and *Commonwealth v. Tu-*

*ladziecki*, 513 Pa. 508, 522 A.2d 17 (1987). Therefore, we must determine if Appellants have raised a substantial question that the sentence imposed is not appropriate under the Sentencing Code. *Commonwealth v. Felix*, 372 Pa.Super. 145, 539 A.2d 371 (1988).

■ The trial court sentenced Appellants above the aggravated range outlined in the Sentencing Guidelines; thus, a substantial question is raised only when the sentence is unreasonable. *Id.* at 150–52, 539 A.2d at 374. We note that ordinarily, allegations that a sentencing court "failed to consider" or "did not adequately consider" various factors is really a request for this court to put its judgment in place of the trial court's and do not raise a substantial question. *Commonwealth v. Montalvo*, 434 Pa.Super. 14, 641 A.2d 1176 (1994). Further, a claim of excessiveness when the sentence is within the statutory limits is not a substantial question. *Commonwealth v. Dungan*, 372 Pa.Super. 323, 539 A.2d 817 (1988). However, because of the unusual nature of this case, we will briefly address the merits of Appellants' argument.

■ The standard of review in sentencing matters is well settled. Sentencing is left to the discretion of the sentencing court and will not be disturbed absent a manifest abuse of discretion. *Commonwealth v. Plank*, 498 Pa. 144, 145, 445 A.2d 491, 492 (1982).

■ Appellants argue the trial court improperly considered their prior record in deciding their sentence. Appellants' prior records stem from the death of their child, Clayton, in 1991. Clayton was nine years old and died from complications arising from an ear infection. Because Appellants did not take Clayton for medical treatment, they were prosecuted and pled no contest to involuntary manslaughter and endangering the welfare of a child. In that instance, Appellants received two years of probation.

The trial court based its departure from the sentencing guidelines on the repetitive nature of Appellants' crime. The trial court

---

1. In reviewing trial matters, we have relied on the Reproduced Record because an original trial transcript was never filed with this court. We note that Appellee has not objected to the Reproduced Record.

adequately explained its rationale and justification for the sentence in its June 10, 1997 order. The court gave great emphasis to the lack of opportunity for rehabilitation of Appellants and possibility of a recurrence of these criminal events. We will not disturb the trial court's well-justified sentence.

Appellants make several other arguments in which they assert the trial court did not properly give weight to certain testimony and sentencing factors. However, Appellants do not dispute the fact that the trial court was aware of and even addressed these factors. As stated above, we will not disturb a trial court's sentence on this basis absent an abuse of discretion.

Judgment of sentence affirmed.