402 A.2d 674

COMMONWEALTH of Pennsylvania

v.

**Darcel HOWARD, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 15, 1978.

Decided April 20, 1979.

Stewart A. Bernstein, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Com., appellee.

Before PRICE, HESTER and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant contends that the Commonwealth failed to prove her guilty of involuntary manslaughter beyond a reasonable doubt because the evidence was insufficient to prove that her actions were reckless or directly caused the

death of her five year old daughter. We conclude that the evidence was sufficient to prove all the essential elements of the crime, and therefore, we affirm.

Appellant resided with her daughter and a boyfriend, Edward Watts. For a period of several weeks before the child's death, Watts regularly beat the child and subjected her to various forms of sadistic abuse. Appellant also struck the child on occasion, sometimes with a belt or strap. On the evening of March 5, 1977, during the course of a beating by Watts, the child fell and hit her head on a piece of furniture. When appellant could not awaken her child the next morning, Watts called the police and fabricated a story to explain the child's injuries, which included a bloodied nose and bruised forehead. The child was pronounced dead on arrival at a local hospital. The stated cause of death was multiple injuries to the head and trunk.[1]

Under Section 2504 of our Crimes Code, 18 Pa.C.S.A. § 2504, "A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person." Although there was evidence in the record that appellant struck her child on occasion, the lower court in this waiver trial premised appellant's culpability on her failure to protect her child from the

---

1. A post-mortem examination of the child revealed 43 major categories of external wounds. Of these, some were recent, some were several days old, and others were more remote. The medical examiner also described numerous internal injuries to the child, including extensive contusions of the scalp, a bilateral subdural hemorrhage, internal bleeding and swelling in the brain, laceration of the lung tissues, and a remote fracture of the right sixth rib (since healed), which indicated the injury was at least several weeks old and probably older. The examiner stated that the internal injuries were the result of the same multiple blunt impacts on the child's body which caused the various external injuries. Some of the child's injuries also revealed various types of sadistic torture practiced upon her, which we will not detail here.

In this regard, appellant's contention that the medical examiner's testimony on the cause of the child's death was not expressed in the standard of certainty required is without merit. *See Commonwealth v. El*, 255 Pa.Super. 597, 602, 389 A.2d 138, 141 (1978).

more regular and severe beatings inflicted upon her by Watts. We affirm because we conclude that the evidence was sufficient to prove that appellant's failure to protect the child was a direct cause of her death, and that such failure was reckless or grossly negligent under the circumstances.

–1–

Preliminarily we note that an omission to act may create criminal culpability under our Crimes Code even though the law defining the offense, as here, requires an "act", where "a duty to perform the omitted act is otherwise imposed by law." 18 Pa.C.S.A. § 301(b)(2). Here, appellant and the victim stood in the relation of parent and child. A parent has the legal duty to protect her child, and the discharge of this duty requires affirmative performance.[2] *Appeal of Diane B.,* 456 Pa. 429, 433, 321 A.2d 618, 620 (1974). *See also Palmer v. State,* 223 Md. 341, 343, 164 A.2d 467, 468–69 (Ct.App.1960).

–2–

Next we must examine whether the child's death was "a direct result of" appellant's failure to protect her child from Watts' beatings and abuse.[3] While the immediate cause of

**2.** Appellant argues that she was not put on reasonable notice of her duty to act because some of the injuries testified to by the medical examiner (such as the torn lung tissue and the subdural hemorrhage) were internal, and before the morning when the child was declared dead, she did not appear to be in need of medical care.

This argument is without merit for two reasons. First, even if no injuries were apparent at any time, the breach of duty here is not the failure to seek medical attention (*see* note 3 *infra*) but the failure to do anything to protect the child from Watts' savagery. When a parent sees her helpless child being beaten and abused over a period of time, she is not permitted to sit back and wait until the child is in obvious need of medical attention before acting—the duty is to prevent the harm. Secondly, the medical examiner stated at trial that at least a week before the child's death, some of her external wounds would have been visible to a close, competent observer, such as a parent. Therefore, this argument is also without any factual basis.

**3.** Appellant has argued in her brief that because the child might not have survived even if she had been taken to a hospital right after the child's last beating, appellant's failure to provide prompt medical

the child's death was multiple injuries to the head and trunk, inflicted on the child by Watts over a period of several weeks, appellant may still be held culpable for her continuing failure to protect the child during all that time.

■ We recognize that tort concepts of causation have no proper place in criminal homicide prosecutions and that a conviction requires a more direct causal connection. *Commonwealth v. Root,* 403 Pa. 571, 574, 170 A.2d 310, 311 (1961); *Commonwealth v. Reynolds,* 256 Pa.Super. 259, 279, 389 A.2d 1113, 1123 (1978). In *Root,* the decedent was aware of a dangerous condition created by the defendant's recklessness in operating his automobile, but the decedent nonetheless recklessly swerved his car into the left lane attempting to pass the defendant. The decedent thereby drove into the path of an oncoming truck, causing his own death. The Court held that this intervening act of recklessness superseded the defendant's antecedent recklessness. Because the defendant's recklessness was thus not a "direct" cause of the decedent's death criminal culpability could not be imposed.

However, the Supreme Court distinguished *Root* in *Commonwealth v. Skufca,* 222 Pa.Super. 506, 294 A.2d 787 (1972), *aff'd* 457 Pa. 124, 321 A.2d 889, *appeal dismissed,* 419 U.S. 1028, 95 S.Ct. 510, 42 L.Ed.2d 304 (1974), and upheld an involuntary manslaughter conviction of a parent who went out for a social evening leaving her two minor children locked in a room of an unattended apartment. A fire started in the building, and the children, trapped inside, suffocated. The Court stated: "While it is unquestioned that the direct cause of death was smoke inhalation resulting from the fire it does not follow that other acts which contributed in producing the ultimate result cannot provide a basis for criminal responsibility for the deaths.

care was not the direct cause of death. However, the basis of appellant's culpability is not her failure to provide prompt medical aid at that time, but rather the failure to protect her child from Watts' constant abuse over a period of several weeks. *See* note 2 *supra.*

". . . [It] has never been the law . . . that criminal responsibility must be confined to a sole or immediate cause of death. . . . Although suffocation due to fire was the immediate cause of the children's death, appellant's unlawful conduct in leaving them locked in the room, without supervision, susceptible to numerous foreseeable dangers, was the legal cause of their death. . . . The fire produced its fatal result only because of the defenseless position the young victims were left in through their mother's . . . conduct." *Commonwealth v. Skufca,* 457 Pa. at 132–33, 321 A.2d at 893–94. *See also Palmer v. State, supra* 223 Md. at 352, 164 A.2d at 474 (failure to remove child from environment where child was subjected to beatings and abuse was a contributing and continuing cause of child's death).

In the instant case, the argument for culpability is even stronger than in *Skufca,* because appellant was present during the several weeks of Watts' abuse of her child and knowingly consented to it. Unlike *Root,* here there was no superseding act of recklessness by the decedent—a helpless child. Thus we hold that appellant's failure to protect her child from Watts' savagery was a direct cause of death sufficient to impose criminal culpability.

–3–

Lastly, we must consider whether appellant's failure to protect her child was, under these circumstances, reckless or grossly negligent. Section 302(b)(3) of the Crimes Code, 18 Pa.C.S.A. § 302(b)(3) states:

"A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." In *Palmer v. State, supra,* on facts

nearly identical to the case at bar, the Maryland Court of Appeals upheld the involuntary manslaughter conviction of a mother who did not herself inflict any punishment on her child, but allowed her paramour to inflict long and brutal beatings which eventually caused the death of her 20 month old child. The court there said: "We think that the appellant's conduct and actions, in permitting . . . this poor little defenseless urchin to remain in an environment where she was subjected to merciless, inhumane and inordinate brutality of a protracted nature, manifested a recklessness of . . . the rights and feelings of the tiny infant in such a manner so as to support the finding that the appellant's conduct and actions displayed a 'wanton or reckless disregard for human life.' The actions of McCue were so outrageous as to put any reasonable person on guard that the child's life was in real and imminent peril. Manifestly the appellant should, and could, have removed little Terry from the . . . danger." *Id.* at 351–352, 164 A.2d at 473. *See also Commonwealth v. Comber,* 170 Pa.Super. 466, 469, 87 A.2d 90, 92 (1952), *rev'd on other grounds,* 374 Pa. 570, 97 A.2d 343, 37 A.L.R.2d 1058 (1953) (dicta) (when the death of an infant is caused by the neglect of his parents to furnish needed medical aid, it is involuntary manslaughter).

■ Here appellant witnessed and had full knowledge of a continuing pattern of severe beatings, abuse, and sadistic torture inflicted on her child by Watts over a period of at least several weeks. However, appellant did nothing to protect her child. She never evicted or even discouraged Watts. She never reported anything to the public authorities. Taken together with the evidence of different ages and severity of the child's injuries this is sufficient to show that appellant consciously disregarded a manifestly apparent risk to the health and safety of her young child and that this neglect was a gross deviation from the standard of conduct the reasonable parent would observe under the circumstances. *See Commonwealth v. Bowden,* 442 Pa. 365, 276 A.2d 530 (1971) (inflicting ruthless beating on six year old child shows reckless disregard of probability of serious bodily

542

injury); *Commonwealth v. Moore,* 261 Pa.Super. 92, 395 A.2d 1328 (1978) (severe and prolonged beating of seven year old child shows recklessness). It is this long period of knowing yet apathetic acquiescence in her child's undoubted agony which satisfies the culpability requirements of the involuntary manslaughter statute.

Judgment of sentence affirmed.