J-S25011-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| DANIEL J. MURPHY | : | |
| | : | |
| Appellee | : | No. 1076 WDA 2017 |

Appeal from the Order June 30, 2017
In the Court of Common Pleas of Elk County
Criminal Division at No(s): CP-24-CR-0000135-2016

BEFORE: GANTMAN, P.J., PANELLA, J., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED JULY 12, 2018**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Elk County Court of Common Pleas, which granted the petition of Appellee, Daniel J. Murphy, for a writ of *habeas corpus*, and dismissed the criminal complaint that charged Appellee with several offenses stemming from the death of his minor child ("O.M."), for the Commonwealth's failure to present a *prima facie* case on all counts.[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history.  Therefore, we have no need to restate them. Procedurally, we add that the Commonwealth timely filed a notice of appeal

---

[1] Pursuant to Pa.R.A.P. 311(d), the Commonwealth has certified in its notice of appeal that the trial court's order substantially handicapped or terminated the prosecution of the Commonwealth's case against Appellee.  Accordingly, this appeal is properly before us for review.

on July 21, 2017. The court ordered the Commonwealth on July 26, 2017, to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b); the Commonwealth timely complied on August 11, 2017.

The Commonwealth raises the following issues for our review:

> WHETHER THE [TRIAL] COURT ERRED AS A MATTER OF LAW AND/OR ABUSED ITS DISCRETION BY WEIGHING THE 2009 CONVICTION OF SCOTT MURPHY ASSAULTING [APPELLEE] AS BEING "TOO REMOTE IN TIME AND FAR TOO ATTENUATED CIRCUMSTANTIALLY" TO EVIDENCE A PROPENSITY FOR VIOLENCE BY SCOTT MURPHY, SAID EVIDENCE BEING ADMITTED BY THE COMMONWEALTH AT [THE] TIME OF [THE] PRELIMINARY HEARING[?]

> WHETHER THE [TRIAL] COURT ERRED AS A MATTER OF LAW AND/OR ABUSED ITS DISCRETION BY GRANTING [APPELLEE]'S PETITION FOR WRIT OF *HABEAS CORPUS* DISMISSING AS TO COUNT 1, INVOLUNTARY MANSLAUGHTER, 18 PA.C.S.A. § 2503(A), MISDEMEANOR FIRST DEGREE, OF THE CRIMINAL INFORMATION AS THE COMMONWEALTH MAINTAINS THAT A *PRIMA FACIE* CASE WAS PRESENTED BY THE COMMONWEALTH IN SUPPORT OF SAID CRIMINAL OFFENSE[?]

> WHETHER THE [TRIAL] COURT ERRED AS A MATTER OF LAW AND/OR ABUSED ITS DISCRETION BY GRANTING [APPELLEE]'S PETITION FOR WRIT OF *HABEAS CORPUS* DISMISSING COUNT 2, ENDANGERING THE WELFARE OF CHILDREN, 18 PA.C.S.A. § 4304(A)(1), FELONY THIRD DEGREE, OF THE CRIMINAL INFORMATION AS THE COMMONWEALTH MAINTAINS THAT A *PRIMA FACIE* CASE WAS PRESENTED BY THE COMMONWEALTH IN SUPPORT OF SAID CRIMINAL OFFENSE[?]

> WHETHER THE [TRIAL] COURT ERRED AS A MATTER OF LAW AND/OR ABUSED ITS DISCRETION BY GRANTING [APPELLEE]'S PETITION FOR WRIT OF *HABEAS CORPUS* DISMISSING COUNT [4], ENDANGERING THE WELFARE OF CHILDREN, 18 PA.C.S.A. § 4304(A)(1), FELONY THIRD DEGREE, OF THE CRIMINAL INFORMATION AS THE COMMONWEALTH MAINTAINS THAT A *PRIMA FACIE* CASE

WAS PRESENTED BY THE COMMONWEALTH OF SAID CRIMINAL OFFENSE[?]

WHETHER THE [TRIAL] COURT ERRED AS A MATTER OF LAW AND/OR ABUSED ITS DISCRETION BY GRANTING [APPELLEE]'S PETITION FOR WRIT OF *HABEAS CORPUS* DISMISSING COUNT [3], RECKLESSLY ENDANGERING ANOTHER PERSON, 18 PA.C.S.A. § 2705, MISDEMEANOR SECOND DEGREE, OF THE CRIMINAL INFORMATION AS THE COMMONWEALTH MAINTAINS THAT A *PRIMA FACIE* CASE WAS PRESENTED BY THE COMMONWEALTH OF SAID CRIMINAL OFFENSE[?]

WHETHER THE [TRIAL] COURT ERRED AS A MATTER OF LAW AND/OR ABUSED ITS DISCRETION BY GRANTING [APPELLEE]'S PETITION FOR WRIT OF *HABEAS CORPUS* DISMISSING COUNT 5, RECKLESSLY ENDANGERING ANOTHER PERSON, 18 PA.C.S.A. § 2705, MISDEMEANOR SECOND DEGREE, OF THE CRIMINAL INFORMATION AS THE COMMONWEALTH MAINTAINS THAT A *PRIMA FACIE* CASE WAS PRESENTED BY THE COMMONWEALTH OF SAID CRIMINAL OFFENSE[?]

(Commonwealth's Brief at 4-5).

A pre-trial *habeas* decision is not subject to an abuse of discretion standard. **Commonwealth v. Karetny**, 583 Pa. 514, 880 A.2d 505 (2005). A pre-trial *habeas* decision on the Commonwealth's *prima facie* case for a charged crime is a question of law subject to plenary review. **Commonwealth v. Dantzler,** 135 A.3d 1109, 1112 (Pa.Super. 2016) (*en banc*) (citing **Karetny, supra**).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Richard A. Masson, we conclude the Commonwealth's issues merit no relief. The trial court fully discusses and properly disposes of the questions presented. (**See**

- 3 -

Trial Court Opinion, filed June 30, 2017, at 1-11) (finding: **(1-2)** 2009 conviction of Appellee's brother, Scott Murphy, for drunken assault against Appellee was too remote in time and far too attenuated circumstantially to serve as proof of his propensity for violence; assault was against adult, not child and occurred seven years before O.M.'s death; one episode of inebriated assault against another adult is inadequate as *prima facie* evidence of requisite elements of involuntary manslaughter; Scott Murphy's 2009 conviction does not constitute *prima facie* evidence of Appellee's guilt of involuntary manslaughter; nothing in preliminary hearing record indicates that Appellee knew or how he should have known of atrocious and threatening conditions of Scott and Kristy Murphy's home at time of O.M.'s death; no evidence demonstrated Appellee was told of deplorable conditions or potentially threatening circumstances within home of Scott and Kristy Murphy during Children's stay; similarly, Children's Mother also contacted Scott and Kristy Murphy several times, but received no adverse information; Commonwealth failed to establish *mens rea* of recklessness regarding involuntary manslaughter charge against Appellee, because it failed to demonstrate Appellee knew and consciously disregarded risk in leaving Children in care of Scott and Kristy Murphy; **(3-4)** Commonwealth failed to present sufficient evidence to establish *prima facie* case for two counts of endangering welfare of children ("EWOC") for same reasons; evidence failed to establish what if anything Appellee knew of conditions at Scott and Kristy Murphy's home,

which would indicate Children were in danger and require reasonable person to intervene; therefore, Appellee did not knowingly place Children in circumstances threatening to their welfare; **(5-6)** similarly, Commonwealth failed to establish *prima facie* case for two counts of reckless endangerment of another person ("REAP"), where Commonwealth presented no evidence to demonstrate Appellee knew Children were at risk of death or great bodily harm while Children stayed in home of Scott and Kristy Murphy).  We agree.  The record supports the trial court's decision, and we have no reason to disturb it.  ***See Karetny, supra***.  Accordingly, we affirm on the basis of the trial court's opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/12/2018

# IN THE COURT OF COMMON PLEAS OF THE FIFTY-NINTH JUDICIAL DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | * | COUNTY BRANCH - ELK |
| | * | |
| vs. | * | CRIMINAL |
| | * | |
| DANIEL J. MURPHY | * | NO. CP-24-CR-135-2016 |

## MEMORANDUM OPINION

Pending before the Court is a petition for writ of habeas corpus in the nature of a motion to dismiss all charges for failure to establish a prima facie case filed on behalf of the defendant, Daniel J. Murphy, on July 8, 2016. The hearing on the motion was conducted on November 3, 2016, and a legal memorandum was subsequently provided by the Commonwealth. The defendant's petition for writ of habeas corpus challenges the sufficiency of the evidence presented during the June 8, 2016 preliminary hearing conducted before Magisterial District Judge James L. Martin as to the charges in the criminal complaint filed against him in which he was charged with one count of involuntary manslaughter, 18 Pa. C.S.A. § 2504(a); two counts of endangering welfare of children, 18 Pa. C.S.A. § 4304(a)(1); and two counts of recklessly endangering another person, 18 Pa. C.S.A. §2705. All of these charges were bound over to court by Magisterial District Judge Martin at the conclusion of the preliminary hearing.

### 1) Count 1: Involuntary Manslaughter

In Count 1 of the criminal Information filed July 1, 2016, Daniel Murphy is charged with involuntary manslaughter, 18 Pa. C.S.A. §2504(a), incident to the death of his son, O. M.,

who died on or about February 3, 2016. At the time of his death, O. M. was five years old.

For purposes of a preliminary hearing, it is not necessary to establish the accused's guilt beyond a reasonable doubt, but the Commonwealth must establish at least a prima facie case that

1



a crime has been committed and the accused is probably the one who committed it. *Com. v. McBride*, 595 A.2d 589, 591 (Pa. 1991). "The evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to be decided by the jury." *Com. v. Karetny*, 880 A.2d 505, 514 (Pa. 2005).

Involuntary manslaughter is defined as the prohibited act: "when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner; he causes the death of another person." 18 Pa. C.S.A. §2504(a). A person acts recklessly when "he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." 18 Pa. C.S.A. § 302(b)(3).

While an offense may require an act to create criminal culpability, an omission to act may also create criminal culpability where a duty to perform is imposed by law. *Com. v. Howard*, 402 A.2d 674, 676 (Pa. Super. 1979). Such a duty is the legal duty imposed on parents to protect their children, and the discharge of this duty requires affirmative performance. *Id.* at 676. In *Howard*, the defendant was found guilty of involuntary manslaughter as a result of her failure to protect her 5 year old daughter from acts of abuse committed by her boyfriend which occurred over several weeks and of which the defendant was cognizant. *Id.* at 678. The defendant in *Howard* witnessed and had full knowledge of the continued pattern of abuse perpetrated by her boyfriend, which ultimately resulted in the child's death, but consciously disregarded the risk to the health and safety of the child. *Id.* The *Howard* court reasoned that this conscious disregard by the

defendant was a gross deviation from the standard conduct a reasonable parent would take under the circumstances. *Id.* It was the knowingly gross deviation from the standard conduct of a parent that created the criminal culpability which supported the finding that the defendant in *Howard* was guilty of involuntary manslaughter.

In the present case, however, the Court finds that insufficient evidence was presented to establish a prima facie case against Daniel Murphy for involuntary manslaughter. The Commonwealth has promoted that given Daniel Murphy's knowledge of his brother Scott Murphy's propensity for violence and his failure to personally assure the physical, mental, and emotional health of his children, Daniel Murphy acted recklessly, violating his duty to protect his children, which ultimately placed O.M. in circumstances that lead to his death.

The Commonwealth presented evidence that on December 3, 2015, Daniel Murphy delivered his sons, O.M. and K.M. to the apartment of Scott and Kristy Murphy, the children's paternal uncle and aunt who lived at 149 ½ Main Street, Ridgway Borough, Elk County, Pennsylvania. 6/8/16 P.H. Tr., pgs. 76, 103. The reason provided by Daniel Murphy for leaving his children with Scott and Kristy Murphy was that he lacked appropriate housing for his children in Meadville, Pennsylvania. *Id.* at pgs. 93-94; 102-103. Daniel Murphy explained that his father, a registered sex offender, was moving in with him and it could implicate violations of Megan's Law if the children remained with him. *Id.* Being unable to move elsewhere and given the unavailability of the children's mother, Ashlee Druhot, in December 2015, Daniel Murphy sought the help of Scott and Kristy Murphy. *Id.* They entered into an arrangement whereby Scott and Kristy Murphy would have O.M. and K.M. temporarily live with them until Daniel Murphy could find appropriate housing for his children.

The Commonwealth's evidence also confirmed that Scott and Kristy Murphy had previously lived with Daniel Murphy, Ashlee Druhot, and the subject minor children in Meadville, Pennsylvania, albeit for a short period of time. According to Ashlee Druhot, "they had always loved their nephews just like anybody else would." 6/8/16 P.H. Tr., pg. 53. There was no evidence that Scott or Kristy Murphy have ever posed any type of threat to the children in general and O.M. in particular. Rather, the evidence was that in the past Scott and Kristy were familiar with and loved their nephews.

Upon arriving with the children at Scott and Kristy Murphy's apartment on December 3, 2015, Daniel Murphy met Scott Murphy in the entryway of the 149 ½ Main Street apartment and talked for a few minutes while delivering O.M. and K.m. before he left. *Id.* Daniel Murphy never inspected or surveyed the entire apartment and there was no evidence of any adverse environmental issue present in the apartment when Daniel Murphy delivered his children. Without some evidence that Daniel Murphy knew or should have known about the intolerable conditions that existed when law enforcement officials viewed the apartment on February 3, 2016, he cannot be held to be omniscient. On several occasions between December 3, 2015 and February 3, 2016, Daniel Murphy talked on the phone with his children and Scott Murphy. However, no evidence was presented that would indicate Daniel Murphy was told of the allegedly deplorable conditions or the potentially threatening circumstances that existed within the 149 ½ Main Street apartment. This was confirmed by Ashlee Druhot, who in relaying that she and her mother had contacted Scott and Kristy Murphy on several occasions, never indicated she received any adverse information. 6/8/16 P.H. Tr., pg. 51.

The Commonwealth also presented written statements by Daniel Murphy and Ashlee Druhot that were provided to the Meadville Police Department in an investigation that led to a

4

simple assault conviction of Scott Murphy. That conviction arose from an incident in 2009, when an intoxicated Scott Murphy attacked his brother, Daniel Murphy, with a knife. No children were present, let alone involved or harmed during the incident and this was the only evidence presented regarding any criminal convictions for Scott Murphy or his having any tendency to engage in assaultive behaviors.

The preliminary hearing evidence presented does not even remotely approach the threatening circumstances described in *Howard* in which the defendant consciously disregarded a substantial and unjustified risk. To the contrary, there was no evidence that Daniel Murphy was aware or should have been aware of the allegedly unsanitary and abysmal environment in which his children were living on February 3, 2016. When Daniel Murphy dropped off O.M and K.M. at Scott and Kristy Murphy's apartment on December 3, 2015, he did not enter the apartment, but stayed in the doorway or entryway. Nothing in the record indicates that the condition of the entryway would suggest the remaining areas of the apartment were in any condition unfit for children. Moreover, on several occasions, Daniel Murphy talked on the telephone with O.M., K. M. and Scott Murphy while his children were staying with their uncle and aunt. The record is devoid of any evidence that during these telephone calls Daniel Murphy received any information regarding the allegedly execrable conditions in the apartment or of any potential threats to his children. In fact, Daniel Murphy assured Ashlee Druhot, the mother of O.M. and K.M. that the children were fine and in good health. 6/8/16 P.H. Tr., pgs. 53-55. There is nothing in the preliminary hearing record to indicate that Daniel Murphy had knowledge of or should have had knowledge of the allegedly atrocious conditions and threatening circumstances that existed within Scott and Kristy Murphy's apartment at the time

5

of O.M.'s death. Thus, Daniel Murphy neither knew of nor should have known of the existence of circumstances that threatened O.M.

Scott Murphy's conviction for the 2009 assault of Daniel Murphy is too remote in time and far too attenuated circumstantially to evidence his propensity for violence. The incident that gave rise to the charges occurred some seven years before the death of O.m. and involved Scott Murphy's adult brother, Daniel Murphy, as the victim, not a child. The attempt to expand one episode of an inebriated assault on an adult brother that occurred before the birth of O.m. is inadequate as even prima facie evidence of the requisite elements of involuntary manslaughter.

Without a known risk which Daniel Murphy consciously disregarded or a risk that Daniel Murphy should have known and appreciated, the reckless element cannot be met. Therefore, this Court finds that the Commonwealth failed to establish a prima facie case for involuntary manslaughter and Daniel Murphy is entitled to dismissal of Count 1 of the criminal Information.

### 2) Counts 2 and 4: Endangering the Welfare of Children

In Counts 2 and 4 of the criminal Information, Daniel Murphy was charged with endangering welfare of children (EWOC), 18 Pa. C.S.A. § 4304(a)(1), for O.m. and K.m. respectively. The elements of the offense of EWOC include "a parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa. C.S.A. § 4304(a)(1). The crime of EWOC is a specific intent offense, with the mens rea element being that of a knowing violation of a duty of care. *Com. v. Cardwell*, 515 A.2d 311, 313 (Pa. Super. 1986); *Com. v. Smith*, 956 A.2d 1029

6

(Pa. Super. 2008). A defendant acts knowingly when, 1) "the accused is aware of his or her duty to protect the child;" 2) "is aware that the child is in circumstances that threaten the child's physical or psychological welfare;" and 3) "has either failed to act or has taken actions so lame or meager that such actions cannot reasonably be expected to be effective to protect the child's physical or psychological welfare." *Com. v. Lynn*, 114 A.3d 796 (Pa. 2015) (finding the EWOC conviction of a high-ranking official for the archdiocese was supported, where the defendant in *Lynn* knowingly endangered the child victim's welfare where he knew of his duty to protect the welfare of children within the archdiocese, he believed a priest to be guilty of sexual misconduct with minors, he did not inform parishioners about priest's misconduct, and that concerns had been expressed to him about the priest shortly before the priest assaulted the child victim, although he did not have direct contact with the children in archdiocese).

Here, the Court finds that the Commonwealth failed to present sufficient evidence to establish a prima facie case for two counts of EWOC, 18 Pa. C.S.A. § 4304(a)(1). The first prong of knowingly was met, because Daniel Murphy was aware of his duty to protect O. m. and K.M., as evidenced through his care of the children in Meadville, Pennsylvania, his arranging for them to live in an alternate residence, and through his telephone calls with O.m., k.m., and Scott Murphy in order to check on his children. However, the second prong of knowingly was not met, as Daniel Murphy was not aware there were circumstances that may have threatened the children's physical or psychological welfare. As indicated above, the extent of the evidence presented by the Commonwealth merely established that Daniel Murphy's knowledge of the situation his children were staying in was the state of the entryway when he dropped off his children on December 3, 2015, and through telephone conversations with O. m., k. m., and Scott Murphy. Based on that knowledge, Daniel Murphy reported to Ashlee Druhot the

7

children were all right and in good health and she herself did not have any concerns based on her phone calls and those of her mother with Scott Murphy. Further, Scott Murphy's 2009 simple assault conviction is far too remote in time to evidence that Daniel Murphy, notwithstanding that he was the assault victim, should have known or should have reasonably known of his brother's ongoing proclivity for violence, because the incident that gave rise to that charge occurred some seven years before the death of $\overline{O.M}$. and there was no evidence of similar behavior by Scott Murphy after the 2009 episode. The assault perpetrated by Scott Murphy on his brother, Daniel Murphy, before the subject children were born cannot by any reasonable exercise of extrapolation suffice as even a prima facie basis to establish that Daniel Murphy committed two counts of the crimes of EWOC. Nothing Daniel Murphy knew would indicate his children were in any type of danger that would cause a reasonable person to affirmatively intervene. Therefore, Daniel Murphy did not knowingly place his children in circumstances that would be a threat to their welfare. *Com. v. Lynn*, 114 A.3d 796.

With the crime of EWOC being a specific intent crime, the intent element requires a knowing violation of a duty of care. *Com. v. Cardwell*, 515 A.2d 311, 313 (Pa. Super. 1986); *Com. v. Smith*, 956 A.2d 1029 (Pa. Super. 2008). The evidence presented by the Commonwealth clearly did not demonstrate that based on Daniel Murphy's knowledge between December 3, 2015 through February 3, 2016, he actually had any notice of a risk of harm or of circumstances that threatened the welfare of O.m. and K. m. or might befall his children while in the care of their paternal uncle and aunt, Scott and Kristy Murphy, nor did the Commonwealth present prima facie evidence that Daniel Murphy should have known about some appreciable risk that his children were exposed to. Therefore, Daniel Murphy did not knowingly endanger the welfare of O.m. and K.m. and a prima facie case against Daniel Murphy for two counts of

8

endangering welfare of children was not established. Daniel Murphy is thus entitled to the relief requested in having Counts 2 and 4 of the criminal Information dismissed.

### 3) Counts 3 and 5: Recklessly Endangering Another Person

In Counts 3 and 5 of the criminal Information, Daniel Murphy was charged with recklessly endangering another person (REAP), 18 Pa. C.S.A. §2705, namely his two sons, O.M. and K.M. This crime includes the following prohibited act: when "[a person] recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa. C.S.A. §2705. Specifically, this crime requires that a defendant have a 1.) mens rea of recklessness, 2.) engage in some conduct 3.) that places another person in danger, and 4.) the achievement of placing another person in danger of death or serious bodily injury. *Com. v. Trowbridge*, 395 A.2d 1337, 1340 (Pa. Super. 1978).

The mens rea element of the offense has been defined as "a conscious disregard of a known risk of death or great bodily harm to another person." *Com. v. Hopkins*, 747 A.2d 910, 916 (Pa. Super. 2000). A conscious disregard entails awareness or mindfulness of a discernible recognizable risk, such as brandishing a loaded firearm in the commission of a crime. *Com. v. Peer*, 684 A.2d 1077, 1080-1081 (Pa. Super. 1996). The Commonwealth presented no evidence to demonstrate that Daniel Murphy knew his two sons, O.M. and K.M. , were at risk of death or great bodily harm by virtue of being maintained in the apartment of Scott and Kristy Murphy, their paternal uncle and aunt. Furthermore, Daniel Murphy's criminal culpability cannot rest on a mere presumption that he should have been able to forecast harm befalling his children, particularly when no concerns were raised when Daniel Murphy dropped his children off at Scott and Kristy Murphy's apartment or when he spoke directly with O.M., K.M., , and Scott Murphy over the phone during the following weeks.

9

In addition to the mens rea requirement, the Commonwealth must have presented prima facie evidence that Daniel Murphy did something that placed the children in danger. "Danger, and not merely the apprehension of danger, must be created by the defendant." *Com. v. Hopkins*, 747 A.2d at 916. Daniel Murphy sought the assistance of Scott and Kristy Murphy when he was unable to provide proper housing for O.M. and K.M., in part due to the impending return of Daniel Murphy's father, a registered sex offender. The arrangements for maintaining O.M. and K.M. were to be temporary until Daniel Murphy could secure employment and alternate housing. 6/8/16 P.H. Tr., pg. 105. Between December 3, 2015 and February 3, 2016, Daniel Murphy remained in contract with his children through telephone calls in which he spoke with O.M., K.M., and Scott Murphy. Nothing that was disclosed to or known by Daniel Murphy would have raised any concerns that would cause a reasonably prudent parent to seek immediate intervention to remove the children.

While an offense may require an act to create criminal culpability, an omission to act may also create criminal culpability where a duty to perform is imposed by law as well. *Com v. Cottam*, 616 A.2d 988, 993 (Pa. Super. 1992). Such a duty is the legal duty imposed on parents to protect their children and the discharge of this duty requires affirmative performance. *Id.* Unlike in *Cottam*, however, where the defendants maintained custody and control of their 14-year-old son who died of starvation and their 12-year-old daughter who was severely malnourished, Daniel Murphy did not have any direct face-to-face contact with his sons in the two months after delivering the children to Scott and Kristy Murphy's apartment. Again, for the purpose of establishing reckless endangerment, there must be an actual present ability to inflict harm, not merely the apprehension of danger. *Com. v. Reynolds*, 835 A.2d 720, 727 (Pa. Super.

2003). Not only was there no evidence that Daniel Murphy inflicted any harm, there was no evidence that he apprehended or perceived any risk of danger to his children.

The Court finds that insufficient evidence was presented by the Commonwealth to establish a prima facie case against Daniel Murphy for two counts of recklessly endangering another person. As indicated above, the extent of evidence regarding Daniel Murphy's knowledge of the condition of his children after he delivered them to Ridgway, Pennsylvania, was through telephone conversations between O.M., K.M., and Scott Murphy, and there was no evidence that any phone conversation or any other information source indicated the children were in any danger that would cause a reasonable person to intervene. With no prospective, let alone viable, risk known to Daniel Murphy, there was nothing for him to consciously disregard or anything to require him to affirmatively perform. Therefore, a prima facie case against Daniel Murphy for two counts of recklessly endangering another person was not established and Counts 3 and 5 of the criminal Information are dismissed.

**By the Court:**

June 30, 2017



Richard A. Masson, President Judge

FILED

JUN 3 0 2017

ELK COUNTY
PROTHONOTARY


SCANNED

11