J-S25012-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| ASHLEE DAWN DRUHOT | : | |
| | : | |
| Appellee | : | No. 1077 WDA 2017 |

Appeal from the Order Entered June 26, 2017
In the Court of Common Pleas of Elk County
Criminal Division at No(s):  CP-24-CR-0000136-2016

BEFORE:  GANTMAN, P.J., PANELLA, J., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED JULY 12, 2018**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Elk County Court of Common Pleas, which granted the petition of Appellee, Ashlee Dawn Druhot, for a writ of *habeas corpus*, and dismissed the criminal complaint that charged Appellee with several offenses arising from the death of her minor child ("O.M."), for the Commonwealth's failure to present a *prima facie* case on all counts.[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history.  Therefore, we have no need to restate them.  Procedurally, we add that the Commonwealth timely filed a notice of appeal

---

[1] Pursuant to Pa.R.A.P. 311(d), the Commonwealth has certified in its notice of appeal that the trial court's order substantially handicapped or terminated the prosecution of the Commonwealth's case against Appellee.  Accordingly, this appeal is properly before us for review.

on July 21, 2017. The court ordered the Commonwealth on July 26, 2017, to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b); the Commonwealth timely complied on August 11, 2017.

The Commonwealth raises the following issues for our review:

> WHETHER THE [TRIAL] COURT ERRED AS A MATTER OF LAW AND/OR ABUSED ITS DISCRETION BY WEIGHING THE 2009 CONVICTION OF SCOTT MURPHY ASSAULTING [FATHER] AS BEING "TOO REMOTE IN TIME AND FAR TOO ATTENUATED CIRCUMSTANTIALLY" TO EVIDENCE A PROPENSITY FOR VIOLENCE BY SCOTT MURPHY, SAID EVIDENCE BEING ADMITTED BY THE COMMONWEALTH AT [THE] TIME OF [THE] PRELIMINARY HEARING[?]
>
> WHETHER THE [TRIAL] COURT ERRED AS A MATTER OF LAW AND/OR ABUSED ITS DISCRETION BY GRANTING [APPELLEE]'S PETITION FOR WRIT OF *HABEAS CORPUS* DISMISSING AS TO COUNT 1, INVOLUNTARY MANSLAUGHTER, 18 PA.C.S.A. § 2503(A), MISDEMEANOR FIRST DEGREE, OF THE CRIMINAL INFORMATION AS THE COMMONWEALTH MAINTAINS THAT A *PRIMA FACIE* CASE WAS PRESENTED BY THE COMMONWEALTH IN SUPPORT OF SAID CRIMINAL OFFENSE[?]
>
> WHETHER THE [TRIAL] COURT ERRED AS A MATTER OF LAW AND/OR ABUSED ITS DISCRETION BY GRANTING [APPELLEE]'S PETITION FOR WRIT OF *HABEAS CORPUS* DISMISSING COUNT 2, ENDANGERING THE WELFARE OF CHILDREN, 18 PA.C.S.A. § 4304(A)(1), FELONY THIRD DEGREE, OF THE CRIMINAL INFORMATION AS THE COMMONWEALTH MAINTAINS THAT A *PRIMA FACIE* CASE WAS PRESENTED BY THE COMMONWEALTH IN SUPPORT OF SAID CRIMINAL OFFENSE[?]
>
> WHETHER THE [TRIAL] COURT ERRED AS A MATTER OF LAW AND/OR ABUSED ITS DISCRETION BY GRANTING [APPELLEE]'S PETITION FOR WRIT OF *HABEAS CORPUS* DISMISSING COUNT [4], ENDANGERING THE WELFARE OF CHILDREN, 18 PA.C.S.A. § 4304(A)(1), FELONY THIRD DEGREE, OF THE CRIMINAL INFORMATION AS THE COMMONWEALTH MAINTAINS THAT A *PRIMA FACIE* CASE

WAS PRESENTED BY THE COMMONWEALTH OF SAID CRIMINAL OFFENSE[?]

WHETHER THE [TRIAL] COURT ERRED AS A MATTER OF LAW AND/OR ABUSED ITS DISCRETION BY GRANTING [APPELLEE]'S PETITION FOR WRIT OF *HABEAS CORPUS* DISMISSING COUNT [3], RECKLESSLY ENDANGERING ANOTHER PERSON, 18 PA.C.S.A. § 2705, MISDEMEANOR SECOND DEGREE, OF THE CRIMINAL INFORMATION AS THE COMMONWEALTH MAINTAINS THAT A *PRIMA FACIE* CASE WAS PRESENTED BY THE COMMONWEALTH OF SAID CRIMINAL OFFENSE[?]

WHETHER THE [TRIAL] COURT ERRED AS A MATTER OF LAW AND/OR ABUSED ITS DISCRETION BY GRANTING [APPELLEE]'S PETITION FOR WRIT OF *HABEAS CORPUS* DISMISSING COUNT 5, RECKLESSLY ENDANGERING ANOTHER PERSON, 18 PA.C.S.A. § 2705, MISDEMEANOR SECOND DEGREE, OF THE CRIMINAL INFORMATION AS THE COMMONWEALTH MAINTAINS THAT A *PRIMA FACIE* CASE WAS PRESENTED BY THE COMMONWEALTH OF SAID CRIMINAL OFFENSE[?]

(Commonwealth's Brief at 4-5).

A pre-trial *habeas* decision is not subject to an abuse of discretion standard. **Commonwealth v. Karetny**, 583 Pa. 514, 880 A.2d 505 (2005). A pre-trial *habeas* decision on the Commonwealth's *prima facie* case for a charged crime is a question of law subject to plenary review. **Commonwealth v. Dantzler,** 135 A.3d 1109, 1112 (Pa.Super. 2016) (*en banc*) (citing **Karetny, supra**).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Richard A. Masson, we conclude the Commonwealth's issues merit no relief. The trial court fully discusses and properly disposes of the questions presented. (**See**

- 3 -

Trial Court Opinion, filed June 26, 2017, at 1-10) (finding: **(1-2)** Commonwealth presented insufficient evidence to establish *prima facie* case against Appellee for involuntary manslaughter; Commonwealth's evidence established on or about December 31, 2015, Appellee was aware Daniel J. Murphy ("Father") had delivered their two minor children ("Children") to apartment of Scott and Kristy Murphy, Children's paternal aunt and uncle; Appellee did not have input into Father's decision to move Children to home of uncle and aunt; Appellee did not reside in Elk County and was never present in Scott and Kristy Murphy's home; Father continuously assured Appellee he would bring Children back from Scott and Kristy Murphy's home; in attempt to show Appellee was aware of Scott Murphy's propensity for violence, Commonwealth presented written statement Appellee provided police in investigation of Scott Murphy's 2009 simple assault against Father; during 2009 incident, Scott Murphy was drunk and attacked his adult brother with knife; no children were present or harmed during 2009 incident; Scott Murphy's conviction for 2009 assault of Father is too remote in time and too attenuated to evidence propensity for violence; 2009 incident occurred seven years before death of O.M.; television news interview Appellee gave after death of O.M. did not establish Appellee knew or should have known of threatening conditions at Scott and Kristy Murphy's home; Appellee inquired and received several reports that Children were in good health while living with Scott and Kristy Murphy; statements Appellee made to television news

reporter do not demonstrate any foreknowledge of substantial and unjustifiable risk to O.M. at home of Scott and Kristy Murphy; marginal concern Appellee expressed as to Scott and Kristy Murphy's lack of their own children did not show Appellee knew of Children's living conditions and circumstances; Commonwealth failed to present *prima facie* evidence Appellee consciously disregarded risk to Children; **(3-4)** Commonwealth failed to establish *prima facie* case for two counts of endangering welfare of children ("EWOC"); evidence did not show Appellee knew conditions at Scott and Kristy Murphy's home put Children in danger requiring reasonable person to intervene; Appellee received reports from Father that Children were in good health; Appellee also received reports from her mother and sister, and viewed photographs of Children on Facebook, which corroborated Father's reports; Appellee was unaware of any threatening conduct by Scott and Kristy Murphy that would require action to protect Children; **(5-6)** Commonwealth failed to establish *prima facie* case for two counts of reckless endangerment of another person ("REAP"); Commonwealth presented no evidence to show Appellee knew Children were at risk of death or great bodily harm while Children lived in home of Scott and Kristy Murphy). We agree. The record supports the trial court's decision, and we have no reason to disturb it. ***See Karetny, supra***.

Accordingly, we affirm on the basis of the trial court's opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  7/12/2018

6/20/17
DA
TJC
ECP

# IN THE COURT OF COMMON PLEAS OF THE FIFTY-NINTH JUDICIAL DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA     *     COUNTY BRANCH - ELK

                     *

       vs.                  *     CRIMINAL

                     *

ASHLEE DAWN DRUHOT       *     NO. CP-24-CR-136-2016

## MEMORANDUM OPINION

Pending before the Court is the petition for writ of habeas corpus filed on behalf of the defendant, Ashlee Dawn Druhot, on July 18, 2016. Hearing on the petition was conducted November 3, 2016, and legal memorandums were subsequently provided by counsel. Druhot's petition for writ of habeas corpus challenges the sufficiency of the evidence provided to the issuing authority, Magisterial District Judge James L. Martin, during the June 8, 2016 preliminary hearing as to the charges in the criminal complaint filed against Druhot in which she was charged with one count of involuntary manslaughter, 18 Pa. C.S.A. § 2504(a); two counts of endangering welfare of children, 18 Pa. C.S.A. § 4304(a)(1); and two counts of recklessly endangering another person, 18 Pa. C.S.A. §2705. All of these charges were bound over to court by Magisterial District Judge Martin at the conclusion of the preliminary hearing.

### 1) Count 1: Involuntary Manslaughter

In Count 1 of the criminal Information filed July 1, 2016, Druhot is charged with involuntary manslaughter, 18 Pa. C.S.A. §2504(a), incident to the death of her son, O.M. who died on or about February 3, 2016. At the time of his death, O.M. was five years old. For purposes of a preliminary hearing, it is not necessary to establish the accused's guilt beyond a reasonable doubt, but the Commonwealth



1

must establish at least a prima facie case that a crime has been committed and the accused is probably the one who committed it. *Com. v. McBride*, 595 A.2d 589, 591 (Pa. 1991). "The evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to be decided by the jury." *Com. v. Karetny*, 880 A.2d 505 (Pa. 2005).

Involuntary manslaughter includes the prohibited act: "when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner; he causes the death of another person." 18 Pa. C.S.A. §2504(a). A person acts recklessly when they "consciously disregard[] a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." 18 Pa. C.S.A. § 302(b)(3).

Where an offense requires an act to create criminal culpability, an omission to act may create criminal culpability where a duty to perform is imposed by law. *Com. v. Howard*, 402 A.2d 674, 676 (Pa.Super. 1979). Such a duty is the legal duty imposed on parents to protect their children and the discharge of this duty requires affirmative performance. *Id.* at 676. In *Howard*, the defendant was found guilty of involuntary manslaughter as a result of her failure to protect her child from acts of abuse committed by her boyfriend, which occurred over several weeks. *Id.* at 678. The defendant in *Howard* witnessed and had full knowledge of the continued pattern of abuse by her boyfriend, but consciously disregarded the risk to the health and safety of her child. *Id.* The *Howard* court reasoned that this conscious disregard by the defendant was a gross

2

deviation from the standard conduct a reasonable parent would take under the circumstances. *Id.* It was this gross deviation from the standard conduct that created the criminal culpability required to find the defendant in *Howard* guilty of involuntary manslaughter.

In the present case, the Court finds that the evidence presented is insufficient to establish a prima facie case against Druhot for involuntary manslaughter. The Commonwealth's evidence established that on or about December 31, 2015, Druhot was aware that Daniel Murphy, the father of her children, O. M. and K. M., delivered the children to the apartment of Scott and Kristy Murphy, the children's paternal uncle and aunt who lived at 149 ½ Main Street, Ridgway Borough, Elk County, Pennsylvania. Druhot also was aware that the children remained with Scott and Kristy Murphy until the death of O. M. on or about February 3, 2016. 6/8/16 P.H. Tr., pg. 103. Druhot did not have input into Daniel Murphy's decision to move the children to Ridgway, she did not reside in Elk County, she was never present in Scott and Kristy Murphy's apartment, and Daniel Murphy continuously made assurances to the defendant that he would bring both children back. However, the only evidence the Commonwealth presented in the context of this charge was a simple assault conviction for Scott Murphy and a statement made by Druhot during her interview on February 4, 2016, to Sara Small, a multimedia journalist affiliated with WJAC-TV who was covering the story about the death of O. M.

The Commonwealth promoted that Druhot was aware of Scott Murphy's propensity for violence as she was present during an assault and gave a statement to the police that lead to the conviction of Scott Murphy for simple assault. The incident that resulted in Scott Murphy's simple assault conviction occurred in 2009, when he was intoxicated and attacked his brother, Daniel Murphy, with a knife. No children were present, let alone involved or harmed during the

3

incident and this was the only evidence presented regarding any criminal convictions for Scott Murphy.

The Commonwealth also asserts that the Sara Small interview of Druhot is evidence of Druhot's knowledge of the unsafe circumstances ( _O.M. and K.M._ lived in at Scott and Kristy Murphy's apartment. The interview occurred on February 4, 2016, the day after _O.M._ was found dead. 6/8/16 P.H. Tr., pgs. 45-63. During the interview, Druhot indicated that she believed her children were in good care because she saw recent photographs of the children on Facebook and received reports from her mother and Daniel Murphy, the children's father, during the latter part of January 2016, and from her sister, as recently as three days prior to _O.M.'s_ death, all of which described both children as being fine and in good health. *Id.* at pgs. 53-55. She also indicated Scott and Kristy Murphy lived with her and Daniel Murphy for a short period of time, during which both Scott and Kristy Murphy showed love for their nephews. *Id.* at pgs. 52-53. However, Druhot stated:

> Scotty doesn't have any children so I've always had a concern - - not that I don't believe somebody that doesn't have children can't care for a child, but they weren't equipped in their home for children. And I always felt more comfortable sending my children somewhere where there has been other children. It means it's already an environment where children have lived and been and it's got the child feel to it.

Id. at pg. 53. Notwithstanding that statement, when asked by Sara Small "So . . . you were of the belief that he [ _O.M._ ] was in good care?", Druhot responded "Yes. Oh yes." 6/8/16 P.H. Tr., pg. 52.

The present case is not at all similar to the circumstances described in *Howard* where the defendant consciously disregarded a substantial and unjustified risk, but one where Druhot was

4

not aware of the allegedly deplorable circumstances in which her children were living or any other potential risk of harm. Druhot neither knew of nor should have known of the existence of circumstances that threatened her children. She inquired and received several reports that reiterated that the children were in good health and otherwise fine while living with Scott and Kristy Murphy. Likewise, Scott Murphy's conviction for the 2009 assault of Daniel Murphy is too remote in time and far too attenuated to evidence his propensity for violence. The incident that gave rise to the charges occurred some seven years before the death of O. m. and involved his adult brother, Daniel Murphy, as the victim, not a child. The attempt to expand one episode of an inebriated assault on an adult brother that occurred before the birth of O. m.

is inadequate as even prima facie evidence of the requisite elements of involuntary manslaughter.

Moreover, the statements made by Druhot during her interview in which she expressed her concern for leaving the children with Scott and Kristy Murphy does not remotely demonstrate any foreknowledge of or any demonstration of any act perpetrated by Scott or Kristy Murphy which a reasonable person would identify as a substantial and unjustifiable risk to O. M. requiring an affirmative act of intervention. This marginal concern of Druhot in expressing that Scott and Kristy Murphy did not have children is not the kind that indicates Druhot knew the circumstances in which her children were being maintained. Instead, these concerns echo those any parent might have when leaving a child in the care of a family member who may be inexperienced in childcare. Without a known risk which Druhot consciously disregarded or a risk that Druhot should have known and appreciated, the reckless element cannot be met. Therefore, this Court finds that the Commonwealth failed to establish a

prima facie case for involuntary manslaughter and Druhot is entitled to dismissal of Count 1 of the criminal Information.

### 2) Counts 2 and 3: Endangering the Welfare of Children

In Counts 2 and 3 of the criminal Information, Druhot is charged with two counts of endangering welfare of children (EWOC), 18 Pa. C.S.A. § 4304(a)(1), for O.M. and K.M. respectively. The elements of the offense of EWOC include, a "parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa. C.S.A. § 4304(a)(1). A defendant acts knowingly when, 1) "the accused is aware of his or her duty to protect the child;" 2) "is aware that the child is in circumstances that threaten the child's physical or psychological welfare;" and 3) "has either failed to act or has taken actions so lame or meager that such actions cannot reasonably be expected to be effective to protect the child's physical or psychological welfare." *Com. v. Miller*, 600 A.2d 988, 990 (Pa.Super. 1992). In *Miller*, a mother left her child unattended because she believed her child's father made arrangements with a neighbor to watch the child while they were gone. *Id.* at 989. However, the child's father never made arrangements with the neighbor nor did the neighbor watch the child. *Id.* The court found the mother did not knowingly leave the child unattended, therefore, she did not knowingly endanger the welfare of her child, even if mother exercised poor judgment in believing the child's father, *Id.* at 991, reasoning that mother's gullibility in believing father's babysitting arrangement with the neighbor, though a possible mistake in judgment, did not rise to the level of criminal culpability of knowingly leaving the child unattended. *Id.*

6

Here, the Court finds that the Commonwealth failed to present sufficient evidence to establish a prima facie case for two counts of EWOC, 18 Pa. C.S.A. § 4304(a)(1). The first prong of knowingly endangering was met as Druhot was aware of her duty to protect the children, as evidenced through her phone calls with family members, including Daniel Murphy, to check on the children. However, the second prong of knowingly endangering was not met, as Druhot was not aware there were circumstances that may have threatened the children's physical or psychological welfare. As indicated above, the Commonwealth's marginal evidence was that from late December 2015 Druhot had knowledge her children were in the care of Scott and Kristy Murphy in Ridgway, Pennsylvania. In the Small interview of February 4, 2016, Druhot explained that she received reports from Daniel Murphy that both children were in good health. Druhot had no reason to disbelieve Daniel Murphy, as she also received reports from her mother and her sister and viewed photographs of both children on Facebook which supported the reports from Daniel Murphy. The confirmed information received from Druhot's mother and sister and the Facebook postings bolster the argument that Druhot was unaware of any threat of harm to O.M. or K.M. Not only did Druhot not know of any threatening conduct by Scott and Kristy Murphy that would require her to act, she possessed no information that would have compelled a reasonable person to act so as to protect the children.

The crime of EWOC is a specific intent crime with the intent element being a knowing violation of a duty of care. *Com. v. Cardwell*, 515 A.2d 311, 313 (Pa. Super. 1986); *Com. v. Smith*, 956 A.2d 1029 (Pa. Super. 2008). The evidence presented by the Commonwealth clearly did not demonstrate that Druhot had any actual notice of any risk of harm that might befall her children while in the care of their paternal uncle and aunt, Scott and Kristy Murphy, nor did the Commonwealth present prima facie evidence that Druhot should have known about some

7

appreciable risk. An assault perpetrated by Scott Murphy on his brother before the subject children were born cannot by any reasonable exercise of extrapolation suffice as even a prima facie basis to establish that Druhot committed two counts of the crimes of EWOC. Druhot did not knowingly endanger the welfare of ~~t~~ O.M. and K.M. and a prima facie case against Druhot for two counts of endangering welfare of children was not established. Druhot is thus entitled to the relief requested in having Counts 2 and 3 of the criminal Information dismissed.

### 3) Counts 4 and 5: Recklessly Endangering Another Person

In Counts 4 and 5 of the criminal Information, Druhot is charged with two counts of recklessly endangering another person, 18 Pa. C.S.A. §2705, namely her two sons, O.M. and K.M. This crime includes the following prohibited act: when "[a person] recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa. C.S.A. §2705. Specifically, this crime requires that a defendant have a 1.) mens rea of recklessness, 2.) engage in some conduct 3.) that places another person in danger, and 4.) the achievement of placing another person in danger of death or serious bodily injury. *Com. v. Trowbridge*, 395 A.2d 1337, 1340 (Pa. Super. 1978).

The mens rea element of the offense has been defined as "a conscious disregard of a known risk of death or great bodily harm to another person." *Com. v. Hopkins*, 747 A.2d 910, 916 (Pa. Super. 2000). A conscious disregard entails awareness or mindfulness of a discernible recognizable risk, such as brandishing a loaded firearm in the commission of a crime. *Com. v. Peer*, 684 A.2d 1077, 1080-1081 (Pa. Super. 1996). The Commonwealth presented no evidence to demonstrate that Druhot knew that her two sons, O.M. and K.M. , were at risk of death or great bodily harm by virtue of their being maintained by their paternal uncle and

8

aunt. Furthermore, Druhot's criminal culpability cannot rest on a presumption that she should have been able to forecast harm befalling her children, particularly when her inquires led to her receiving positive reports regarding her children's wellbeing.

In addition to the mens rea requirement, the Commonwealth must have presented prima facie evidence that Druhot did something that placed the children in danger. "Danger, and not merely the apprehension of danger, must be created by the defendant." *Com. v. Hopkins*, 747 A.2d at 916. Druhot had nothing to do with placing her sons with Scott and Kristy Murphy and once she determined the children's whereabouts, she asked about their conditions and was presented with no negative information that would cause a reasonably prudent parent to seek immediate intervention.

Where an offense requires an act to create criminal culpability, an omission to act may create criminal culpability where a duty to perform is imposed by law as well. *Com v. Cottam*, 616 A.2d 988, 993 (Pa. Super. 1992). Such a duty is the legal duty imposed on parents to protect their children and the discharge of this duty requires affirmative performance. *Id.* Unlike in *Cottam*, however, where the defendants maintained custody and control of their 14-year-old son who died of starvation and their 12 year-old daughter who was severely malnourished, Druhot did not have any direct contact with her sons in the month or so after she learned where they were staying. Again, for the purpose of establishing reckless endangerment, there must be an actual present ability to inflict harm, not merely the apprehension of danger. *Com. v. Reynolds*, 835 A.2d 720, 727 (Pa. Super. 2003).

The Court finds that insufficient evidence was presented by the Commonwealth to establish a prima facie case against Druhot for two counts of recklessly endangering another person. As indicated above, the extent of evidence regarding Druhot's knowledge of the

condition of her children was through reports she received from Daniel Murphy, her mother, and her sister, all of whom indicated both children were fine and in good health. These reports were further verified through photographs of the children posted to Facebook. Further, Scott Murphy's 2009 simple assault conviction is far too remote in time to evidence his propensity for violence, because the incident that gave rise to the charges occurred some seven years before the death of O.M. ʳ. Moreover, statements made by Druhot during her interview did not express her knowledge of known risk but of a generic concern of having her children placed with Scott and Kristy Murphy, whom she viewed as inexperienced in childcare because they did not have children of their own. With no prospective, let alone viable, risk known to Druhot, there was nothing for her to consciously disregard or anything to require her to affirmatively perform. Therefore, a prima facie case against Druhot for two counts of recklessly endangering another person was not established and Counts 4 and 5 of the Information are dismissed.

**By the Court:**

June 26, 2017

Richard A. Masson, President Judge



F I L E D
JUN 2 6 2017
ELK COUNTY
PROTHONOTARY

10